[833 NE2d 213, 800 NYS2d 70]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLOS CABAN, Appellant.

Argued May 4, 2005; decided June 14, 2005

144

**POINTS OF COUNSEL**

*Robert J. Boyle,* New York City, and *Lynne F. Stewart* for appellant. I. The lower court committed reversible error in admitting, over appellant's objection, the hearsay declarations of Derrick Garcia and Pello Torres. (*People v Rastelli,* 37 NY2d 240, 423 US 995; *People v Salko,* 47 NY2d 230; *People v Ardito,* 86

AD2d 144, 58 NY2d 842; *People v Bell,* 48 NY2d 913; *People v Green,* 188 AD2d 662; *People v Bac Tran,* 80 NY2d 170; *People v Elias,* 163 AD2d 230, 76 NY2d 985; *People v Crimmins,* 36 NY2d 230.) II. Appellant was denied effective assistance of counsel when counsel failed to (1) move to dismiss the conspiracy count on the ground that George Castro was an accomplice as a matter of law and (2) request that the jury be instructed that Castro was an accomplice as a matter of law and that his testimony required corroboration. (*Strickland v Washington,* 466 US 668; *People v Baldi,* 54 NY2d 137; *People v Benevento,* 91 NY2d 708; *People v Hobot,* 84 NY2d 1021; *People v Vataj,* 121 AD2d 756, 69 NY2d 985; *People v Berger,* 52 NY2d 214; *People v Sweet,* 78 NY2d 263; *People v Cobos,* 57 NY2d 798; *People v Cruz,* 291 AD2d 1; *People v Velasquez,* 76 NY2d 905.) III. The prosecutor's misconduct during summation denied appellant due process of law. (*Donnelly v DeChristoforo,* 416 US 637; *People v Ashwal,* 39 NY2d 105; *People v Diaz,* 170 AD2d 202; *People v Steinhardt,* 9 NY2d 267; *People v McReynolds,* 175 AD2d 31; *People v Hicks,* 102 AD2d 173; *People v Baily,* 58 NY2d 272; *People v Walters,* 251 AD2d 433; *People v Tolbert,* 198 AD2d 132; *People v Brazzeal,* 172 AD2d 757.)

*Robert T. Johnson, District Attorney,* Bronx (*Peter D. Coddington* of counsel), for respondent. I. Appellant has not preserved his claim that the coconspirators' statements were inadmissible because there was no proof that the conspiracy existed at the time they were uttered; in any event, Justice Moore correctly admitted the evidence because the People proved the conspiracy without recourse to the statements by the close of the prosecution's case. (*People v Liccione,* 50 NY2d 850; *People v Seit,* 86 NY2d 92; *People v Damiano,* 87 NY2d 477; *People v Olivo,* 52 NY2d 309; *People v Kinchen,* 60 NY2d 772; *People v Ramos,* 99 NY2d 27; *People v Lyons,* 81 NY2d 753; *People v Berkowitz,* 50 NY2d 333; *People v McKane,* 143 NY 455; *People v Miles,* 123 App Div 862.) II. Appellant's attorney provided a meaningful and effective defense. (*People v Rivera,* 71 NY2d 705; *Strickland v Washington,* 466 US 668; *People v Brown,* 45 NY2d 852; *People v Taylor,* 1 NY3d 174; *People v Benevento,* 91 NY2d 708; *People v Basch,* 36 NY2d 154; *People v Besser,* 96 NY2d 136; *People v Cobos,* 57 NY2d 798; *People v Vataj,* 69 NY2d 985; *People v Stultz,* 2 NY3d 277.) III. The prosecutor properly commented on the evidence and fairly responded to the defense arguments and ad hominem attacks. (*People v Rivera,* 73 NY2d 941; *People v Ashwal,* 39 NY2d 105; *People v Galloway,* 54 NY2d 396; *People v Balls,* 69 NY2d 641; *People v Medina,* 53 NY2d 951; *People v*

*Halm,* 81 NY2d 819; *People v Anthony,* 24 NY2d 696; *People v Berg,* 59 NY2d 294; *People v Nuccie,* 57 NY2d 818; *People v Turriago,* 90 NY2d 77.)

**OPINION OF THE COURT**

Chief Judge KAYE.

Defendant was convicted of conspiracy to commit murder, based largely on the testimony of prosecution witness George Castro. By his own admission, Castro was a street-level drug dealer who, along with several others, worked for defendant, selling crack on Fox Street in the Bronx. Castro resided in defendant's stash house, and was there on March 18, 1995, when the charged conspiracy was allegedly hatched. The object of the conspiracy was to kill Angel Ortiz, a rival drug dealer who also sold crack on Fox Street. Castro testified that he was packaging drugs in the stash house on March 18, along with two of defendant's dealers, Pello Torres and Melvin Butler, and defendant's brother, Derrick Garcia, when defendant informed the group that Ortiz "needed . . . to be killed" because his operations were competing with defendant's drug business, and offered to pay $5,000 for the murder. Castro further testified that Garcia responded, "I'll do it," and Torres offered to provide Garcia with a gun.

On June 1, 1995, Ortiz was murdered in a Fox Street playground, in the presence of three of his drug dealers and his girlfriend's four-year-old daughter. According to Castro's account of the killing, he was in front of the stash house when Torres approached him and said, "It's time." Torres then went into the house, whereupon Garcia came out with a friend. Castro testified that he followed Garcia and the friend to the playground and watched from across the street as Garcia approached Ortiz and argued with him over defendant's drug "spot." As Ortiz turned to walk away, Garcia shot him several times, killing him.

On cross-examination, Castro admitted his involvement in a prior, unsuccessful attempt on Ortiz's life, which took place sometime in mid-March 1995. Although the trial testimony did not establish whether this incident occurred before or after the March 18 meeting, on the date in question Castro, Torres and Butler set out to kill Ortiz. Butler was armed with two guns, while Castro acted as a lookout. The plan was aborted, however, when the police appeared.

Defendant was eventually indicted and tried for murder in the second degree, manslaughter in the first degree, conspiracy

in the second degree, and criminal possession of a weapon in the second degree. The jury convicted him of conspiracy, but acquitted him of the substantive crimes, and a divided Appellate Division affirmed.

## I. Statements of Coconspirators

Defendant's first claim of error relates to the three statements of Garcia and Torres, as testified to by Castro—Garcia's March 18 "I'll do it" and Torres's offer to provide Garcia with a gun, and Torres's June 1 "It's time." Defendant argues that hearsay statements of coconspirators are admissible only when a prima facie case of conspiracy is established independent of the statements, and maintains that the People failed to establish such a case here. We reject that claim.

"A declaration by a coconspirator during the course and in furtherance of the conspiracy is admissible against another coconspirator as an exception to the hearsay rule" (*People v Bac Tran*, 80 NY2d 170, 179 [1992]). The theory underlying the coconspirator's exception is that all participants in a conspiracy are deemed responsible for each of the acts and declarations of the others (*see e.g. People v Rastelli*, 37 NY2d 240, 244 [1975]; Martin, Capra and Rossi, New York Evidence Handbook § 8.3.2.4, at 720 [2d ed]). The exception "is not limited to permitting introduction of a conspirator's declaration to prove that a coconspirator committed the crime of conspiracy, but, rather, may be invoked to support introduction of such declaration to prove a coconspirator's commission of a substantive crime for which the conspiracy was formed" (*People v Salko*, 47 NY2d 230, 237 [1979], *rearg denied* 47 NY2d 1010 [1979]). However, as defendant points out, such declarations may be admitted only when a prima facie case of conspiracy has been established. While the prima facie case of conspiracy "must be made without recourse to the declarations sought to be introduced" (*Salko*, 47 NY2d at 238), "the testimony of other witnesses or participants may establish a prima facie case" (*People v Wolf*, 98 NY2d 105, 118 [2002]).

## A. Relevance of the Challenged Statements

■ At the outset, we note that the same evidence may be admissible under different theories when offered for different purposes. Here, some of the statements at issue were relevant for different purposes with respect to the different charges for which defendant was tried. Specifically, although the March 18

declarations of Garcia and Torres were hearsay when offered to prove the murder and related charges of which defendant was acquitted, they were nonhearsay when offered to prove the only charge now before us—conspiracy.

A conspiracy consists of an agreement to commit an underlying substantive crime (here, murder), coupled with an overt act committed by one of the conspirators in furtherance of the conspiracy (*see* Penal Law §§ 105.15, 105.20). Thus, with respect to the conspiracy charge, Garcia's acceptance of defendant's solicitation to murder Ortiz was relevant not for its truth, but rather as evidence of an agreement to commit the underlying crime— itself an essential element of the crime of conspiracy. In other words, whether or not Garcia in fact killed Ortiz, his acceptance of defendant's invitation to do so was a verbal act which rendered defendant and his coconspirators culpable for the inchoate crime of conspiracy, even if the planned substantive crime never came to fruition. Indeed, even if Garcia had no genuine intent ever to commit the murder, defendant would be guilty of conspiracy if he believed he had entered into such an agreement.

"[T]he 'act' of agreeing is concrete and unambiguous as an expression of each actor's intent to violate the law. . . . The fact of agreement serves only to unequivocally establish a particular actor's intent to commit the object crime by acting with others.

"The identity and degree of participation by the other persons are wholly irrelevant. Also irrelevant are the niceties of contract law concerning when an agreement is consummated (e.g., meeting of the minds). It is the individual who is prosecuted [for conspiracy] and necessarily it is the individual who must have the prescribed *mens rea*. The requisite intent is to join with others to commit a substantive crime. If an individual believes he has so joined, it is sufficient to establish complicity, regardless of the actual fact of agreement. . . . This is particularly so . . . where . . . it appears that the individual defendant is the originator of the criminal plan and the one most anxious to see the successful completion of the criminal objective" (*People v Schwimmer*, 66 AD2d 91, 95-96 [2d Dept 1978], *affd for reasons stated in op below* 47 NY2d 1004, 1005 [1979]).

Similarly, Torres's statement that he would provide the gun for a later homicide—even if ultimately untrue—was admissible for the fact that it was said, inasmuch as its utterance provided evidence of Torres's unlawful agreement with defendant and Garcia. Thus, because the March 18 statements were nonhearsay with respect to the conspiracy charge, the People had no obligation to establish a prima facie case of conspiracy in order for the statements to be admissible.

The analysis differs respecting the admissibility of these declarations as relevant proof of the substantive crimes. Garcia's inculpatory offer to "do it," if introduced as evidence that he had in fact committed the June 1 homicide, would—although proffered in that event for its truth—nevertheless be admissible at defendant's trial under the coconspirator's exception to the hearsay rule as evidence of defendant's complicity in the murder. In that event, however, a prima facie case would need to be established independent of the hearsay statement. The same rule applies to Torres's offer to provide the gun, if used to establish the conspirators' collective guilt of murder and weapon possession.

Thus, the same declarations—relevant both to conspiracy and to the substantive crimes whose commission formed the basis of the conspiratorial enterprise—were admissible at defendant's trial under different theories and different rules, depending on which crimes they were offered to prove. Since the statements were nonhearsay with respect to the conspiracy charge—the only charge before us—defendant's challenge to their admissibility concerning that charge is without merit.

## B. Prima Facie Case of Conspiracy

The third challenged statement—Torres's June 1 "It's time" remark to Castro—was offered for its truth, and therefore hearsay, whether as to the conspiracy charge or the substantive crimes. In the context of Castro's account, Torres's statement in effect meant, "The time has come to kill Ortiz." Nevertheless, this statement was properly admissible against defendant as a declaration made by a coconspirator in the course or in furtherance of the conspiracy, so long as the People established a prima facie case independent of any hearsay statements.

The Appellate Division majority, in affirming defendant's conspiracy conviction, correctly concluded that the People had met this burden. The prosecution introduced, through Castro, defendant's statements at the March 18 meeting that he would

pay $5,000 to have Ortiz murdered,* along with evidence of Garcia's acceptance of defendant's proposal and Torres's offer to procure the murder weapon. Castro further testified that both the shooter and the person allegedly responsible for securing the gun and entering defendant's stash house to notify the shooter that the intended victim was in the playground were present at the March 18 meeting. That these individuals worked as drug dealers for defendant, whose motive for killing Ortiz arose from a desire to eliminate competition, provides further circumstantial proof that the participants in the June 1 shooting were acting on behalf of defendant to protect the economic interests of the drug business from which they all benefitted. In this regard, Castro testified that Garcia argued with Ortiz about defendant's drug "spot" just before he shot him.

## C. Order of Proof

■ We further note that the trial court did not err in conditionally admitting any hearsay statements of coconspirators "subject to connection"—that is, subject to later proof of a prima facie case of conspiracy. Although any statements admitted pursuant to the coconspirator's exception must have been made after the formation of the conspiracy—that is, in the course and in furtherance of it—testimony establishing the prima facie case need not precede testimony about the hearsay statements. Inasmuch as the order of proof at trial is committed to the sound discretion of the trial court (*see e.g. People v Olsen*, 34 NY2d 349, 353 [1974]), a coconspirator's statements are admissible as long as the People independently establish a conspiracy by the close of their case (*see e.g. People v McKane*, 143 NY 455, 473 [1894] [even if the coconspirator's statements were objectionable at the time they were introduced, they were subsequently made competent by proof of the defendant's admissions that the coconspirator was acting under his orders]; *People v Becker*, 215 NY 126, 148-149 [1915]).

---

* Plainly, defendant's own statements could be received in evidence as party admissions (*see People v Chico*, 90 NY2d 585, 589 [1997]; *Reed v McCord*, 160 NY 330, 341 [1899] ["admissions by a party of any fact material to the issue are always competent evidence against him, wherever, whenever or to whomsoever made"]; Prince, Richardson on Evidence § 8-201, at 510 [Farrell 11th ed] [defining an admission as "an act or declaration of a party . . . which constitutes evidence against the party at trial"]).

## II. Ineffective Assistance of Counsel

During the charge conference, defense counsel requested an instruction that if the jury found as a fact that Castro was an accomplice, his testimony required corroboration. The court so charged the jury over the prosecutor's objection. Defense counsel did not, however, request the court to charge that Castro was an accomplice as a matter of law. Defendant now contends that his trial counsel was ineffective for failing to request the latter instruction, and for failing to move to dismiss the conspiracy count on the ground that the People failed in their obligation to corroborate the testimony of an accomplice. These contentions lack merit.

To prevail on his claim that he was denied effective assistance of counsel, defendant must demonstrate that his attorney failed to provide meaningful representation (*see People v Benevento*, 91 NY2d 708, 712 [1998]; *People v Baldi*, 54 NY2d 137, 147 [1981]). A single error may qualify as ineffective assistance, but only when the error is sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial (*see People v Hobot*, 84 NY2d 1021, 1022 [1995]; *People v Flores*, 84 NY2d 184, 188 [1994]). Further, to establish ineffective assistance, a defendant must "demonstrate the absence of strategic or other legitimate explanations" for counsel's allegedly deficient conduct (*People v Rivera*, 71 NY2d 705, 709 [1988]).

There can be no denial of effective assistance of trial counsel arising from counsel's failure to "make a motion or argument that has little or no chance of success" (*People v Stultz*, 2 NY3d 277, 287 [2004]). Because the evidence adduced at trial did not establish that Castro was an accomplice as a matter of law, counsel's failure to request that the jury be charged that he was did not constitute ineffective assistance.

An accomplice is defined as,

> "a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in . . .

> "[t]he offense charged . . . or . . .

> "[a]n offense based upon the same or some of the same facts or conduct which constitute the offense charged" (CPL 60.22 [2]).

Where "the undisputed evidence establishes that a witness is an accomplice, the jury must be so instructed but, if different

inferences may reasonably be drawn from the proof regarding complicity . . . the question should be left to the jury for its determination" (*People v Basch*, 36 NY2d 154, 157 [1975]). In other words, a "witness is an accomplice as a matter of law only if the jury could reasonably reach no other conclusion but that he participated in the offense charged or an offense based upon the same or some of the same facts or conduct which constitute the offense charged" (*People v Besser*, 96 NY2d 136, 147 [2001]).

While Castro's role in the initial mid-March attempted murder, which may have occurred prior to the March 18 meeting and thus prior to and apart from the conspiracy, coupled with Castro's presence at the March 18 meeting and June murder, may have been sufficient to raise a factual issue as to his accomplice status respecting the charged conspiracy, this testimony was not sufficient to render Castro an accomplice as a matter of law. If the mid-March attempted murder predated the March 18 meeting at which the conspiracy was formed, Castro's participation in it would have been insufficient to render him an accomplice to the conspiracy as a matter of law, even though its intended victim was the same as the subject of the murder conspiracy (*see People v Cobos*, 57 NY2d 798, 801 [1982] [witness's participation in an assault and attempted robbery did not make him an accomplice as a matter of law to murder of the same victim committed a few hours later by accomplices to the earlier crimes]). Further, Castro testified that he did not help Garcia with the June murder. Thus, the jury could have either found, as defense counsel argued, that Castro was indeed an accomplice to the conspiracy because he participated in a prior attempt on Ortiz's life and attended the March 18 meeting, or credited the prosecutor's contrary argument that Castro's presence at the murder did not make him an accomplice inasmuch as the record contained no evidence showing that he was anything more than a benign spectator at the March 18 meeting and the June murder. That being so, the undisputed evidence did not establish Castro's accomplice status, and the issue was therefore left to the jury as a question of fact.

Defendant's further argument that Castro was an accomplice as a matter of law because he was undeniably an accomplice to a separate, uncharged drug conspiracy involving defendant is also without merit. Although it is undisputed that Castro worked for defendant's drug business, the indictment filed in this criminal action did not allege a conspiracy to sell drugs; rather, the sole charges involved a conspiracy to commit (and

the substantive commission of) murder. An accomplice is a witness in a criminal action who may reasonably be considered to have participated in either the offense charged or an "offense based upon the same or some of the same facts or conduct which constitute the offense charged" (CPL 60.22 [2] [b]).

Here, the facts and conduct constituting the crimes of murder and conspiracy to commit murder did not involve any sale of drugs in which Castro participated, nor was any sale of drugs alleged in the indictment as an overt act committed in furtherance of the conspiracy. Although the underlying motive for Ortiz's murder reflected a desire to eliminate Ortiz as a competitor of defendant's drug business, motive is not an element of murder or conspiracy. The mere circumstance that the elimination of a competitor may have furthered the ends of the uncharged drug conspiracy is insufficient to confer accomplice-as-a-matter-of-law status on a nonparticipant in the murder (*see e.g. People v McAuliffe*, 36 NY2d 820, 822 [1975] ["To hold, as defendant would have us, that it should suffice to show only that the particular witness was 'in some way implicated' in defendant's criminal activity would be to stretch the statute far beyond the ambit intended by the Legislature"]; *People v Brooks*, 34 NY2d 475, 477-478 [1974]; *People v Fiore*, 12 NY2d 188, 199-200 [1962] [a conspiracy to conceal a prior conspiracy is an independent crime]).

Defendant has, moreover, failed to demonstrate the absence of strategic or other legitimate explanations for counsel's decision to request only that Castro's accomplice status be submitted to the jury as a question of fact. In order to have been entitled to an accomplice-as-a-matter-of-law charge, defendant would have needed to establish that the initial attempted murder involving Castro postdated the birth of the conspiracy at the March 18 meeting. But had defense counsel endeavored to clarify that sequence of events, he would have risked eliciting testimony that the attempted murder predated the March 18 meeting, thereby potentially depriving him of the opportunity to submit even as a question of fact the issue of Castro's status as an accomplice to the conspiracy to murder Ortiz.

■ We reject defendant's additional claim that counsel was ineffective for failing to move to dismiss the conspiracy count for lack of corroboration of accomplice testimony. "A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense"

(CPL 60.22 [1]). However, corroborative evidence need not establish all elements of the offense. "New York's accomplice corroboration protection . . . requires only enough nonaccomplice evidence to assure that the accomplices have offered credible probative evidence" that connects "the accomplice evidence to the defendant" (*People v Breland*, 83 NY2d 286, 293 [1994]). Indeed, even "[s]eemingly insignificant matters may harmonize with the accomplice's narrative so as to provide the necessary corroboration" (*People v Steinberg*, 79 NY2d 673, 683 [1992]).

Even if Castro had been found by the jury to be an accomplice, there was sufficient independent evidence of corroboration to satisfy the minimal requirements of CPL 60.22 (1). Castro's testimony regarding defendant's motive for killing Ortiz—to protect his drug-dealing operation—was supported by Ortiz's girlfriend, who testified that defendant and Ortiz were competing drug dealers on Fox Street. In addition, that Garcia—defendant's brother and one of the street-level dealers present at the March 18 meeting—was arrested for Ortiz's murder supported Castro's testimony. Moreover, independent evidence from the police and medical examiner as to the location of Ortiz's body at the scene of the murder and the location of the gunshot wounds corresponded with the details that Castro provided (*see Breland*, 83 NY2d at 293). Thus, there were sufficient "standard confirmatory ties" (*id.* at 294) from which the jury could have concluded that Castro credibly connected defendant to the murder and testified about the events surrounding the June 1 killing. Accordingly, defense counsel was not ineffective for failing to seek dismissal of the conspiracy charge (*see Stultz*, 2 NY3d at 287).

■ Finally, we note that defendant claims ineffective assistance under both the Federal and State Constitutions (*see* US Const Amend VI; NY Const, art I, § 6). Under the two-pronged test established in *Strickland v Washington* (466 US 668 [1984]), a defendant must, in order to prevail on a federal claim of ineffective assistance, demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. Prejudice exists when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (466 US at 694). Our state standard of meaningful representation, by contrast, does not require a defendant to "fully satisfy the prejudice test of *Strickland*," although we "continue to regard a defendant's showing of prejudice as a significant but not indispensable ele-

ment in assessing meaningful representation" (*Stultz*, 2 NY3d at 284), whose prejudice component focuses on the "fairness of the process as a whole rather than its particular impact on the outcome of the case" (*Benevento*, 91 NY2d at 714). Thus, under our State Constitution, even in the absence of a reasonable probability of a different outcome, inadequacy of counsel will still warrant reversal whenever a defendant is deprived of a fair trial. Because our state standard thus offers greater protection than the federal test, we necessarily reject defendant's federal constitutional challenge by determining that he was not denied meaningful representation under the State Constitution.

Defendant's further claim that prosecutorial misconduct in summation warrants reversal is without merit.

Accordingly, the order of the Appellate Division should be affirmed.

Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order affirmed.