[848 NYS2d 67]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LOUIS CYRUS, Appellant.

First Department, December 18, 2007

## APPEARANCES OF COUNSEL

*Richard M. Greenberg, Office of the Appellate Defender,* New York City (*Risa Gerson* of counsel), and *Weil, Gotshal & Manges LLP,* New York City (*Yehudah L. Buchweitz* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney,* New York City (*Mark Dwyer* of counsel), for respondent.

## OPINION OF THE COURT

GONZALEZ, J.

The critical issue at this criminal trial was whether defendant merely stole property from a Duane Reade store, thereby committing the misdemeanor crime of petit larceny, or whether he brandished a box cutter during the course of the theft, elevating his conduct to the crime of felony robbery. While the prosecution's evidence was strong and credible, the failure of defendant's trial counsel to investigate the law and facts relevant to the case led to two crucial errors that effectively doomed his client's defense to failure. Accordingly, defendant's conviction must be reversed on the ground that he was denied his constitutional right to the effective assistance of counsel (US Const Amend VI; NY Const, art I, § 6).

The prosecution produced two eyewitnesses at trial, both employees of the Duane Reade store. A cashier testified that she observed defendant putting merchandise in a bag while kneeling on the floor, causing her to alert the acting store manager. Both employees confronted defendant and told him to stop. At that point, defendant took out a silver box cutter with an open blade and said to them "move back or I will slice you." Defendant left the store with the bag and entered a taxi, which was parked immediately outside and was occupied by a woman. The manager banged on the hood of the taxi, refusing to let the taxi leave.

Meanwhile, Police Officers Harper and Accomando, on patrol in their police vehicle, noticed the commotion in front of Duane Reade. Harper exited the car and approached the manager, while Accomando saw defendant exit the taxi and began following him. Defendant complained to Accomando that the manager

was "harassing his girlfriend," and continued crossing the street. At that point, Accomando observed four or five people pointing at defendant saying "it's him," or words to that effect. Accomando subsequently observed a hand signal from Harper indicating that he should arrest defendant, which he did. Harper recovered a silver box cutter from the street a short distance away from where defendant was arrested.

Later, Harper and Accomando viewed a poor quality surveillance videotape of the incident kept by Duane Reade. Although the video was too unclear to definitively identify defendant or the box cutter, the officers were able to observe a "metallic" object in the individual's hand as he left the store. The police requested a copy of the videotape before it was erased by Duane Reade, but the copy turned out to be blank.

A combined *Mapp/Huntley/Wade* hearing was held before trial, at which Harper and Accomando, but not defendant, testified. The court denied defendant's motion to suppress. At trial, defendant testified on his own behalf, admitting that he stole the merchandise from Duane Reade, but denying that he possessed a box cutter during the incident. Defendant further testified that Accomando induced him to falsely confess to having used a box cutter, which he had previously denied, by promising him leniency if he provided information on other crimes and made "credible admissions" regarding the robbery. Defendant understood this to mean that he had to admit to using a box cutter during the robbery. In December 2003, the jury convicted defendant of robbery in the first degree and third-degree weapon possession, and the court sentenced him, as a persistent violent felony offender, to concurrent terms of 20 years to life and 12 years to life, respectively.

In April 2005, defendant filed a pro se CPL 440.10 motion to vacate his conviction on several grounds, including that his confession was involuntary due to heroin withdrawal and a delay in arraignment, and that he was denied the effective assistance of counsel. Defendant's trial counsel filed an affirmation supporting the motion, acknowledging that he overlooked the delay-in-arraignment issue, and noting that he had a chaotic personal and professional life at the time of defendant's trial. By decision dated July 21, 2005, the court denied the motion.

In 2006, defendant, represented by new assigned counsel, moved to renew and reargue the motion to vacate, primarily on the ground of ineffective assistance of trial counsel. Defendant

argued, inter alia, that trial counsel failed to investigate the law and the facts, opened the door to damaging and inadmissible testimony, failed to raise numerous colorable arguments to exclude his confession and failed to timely seek to disqualify the trial prosecutor.

In the order appealed from, dated January 27, 2006, the court granted renewal but adhered to its denial of the motion. The court ruled that notwithstanding counsel's failure to investigate the videotape disclosed by the People, he "clearly" had a "tactical reason" for inquiring about it at trial (2006 NY Slip Op 30254[U], *5). The court reasoned that, because defendant testified at trial that he did not possess a box cutter during the crime, and "[p]resumably" told his attorney the same thing, it was a reasonable strategy for the attorney to ask the officer about the videotape in order to confirm defendant's assertion (*id.*).

In addition, the court rejected defendant's arguments that counsel failed to investigate the circumstances of his confession or mount an adequate challenge to its admissibility, and that counsel was ineffective in failing to timely move to disqualify the trial prosecutor who assisted in taking defendant's confession on the ground that she was an unsworn witness.

On appeal, defendant raises four arguments: (1) his counsel was ineffective; (2) the trial court erred in denying defendant's motion for a mistrial or curative instruction regarding the police officers' testimony about watching the videotape; (3) the court erred in denying his motion to disqualify the trial prosecutor; and (4) defendant's sentence as a persistent violent felony offender violated the rule of *Apprendi v New Jersey* (530 US 466 [2000]).

To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that his or her attorney failed to provide meaningful representation (*People v Caban*, 5 NY3d 143, 152 [2005]; *People v Benevento*, 91 NY2d 708, 712 [1998]; *People v Baldi*, 54 NY2d 137, 147 [1981]). "In applying this standard, counsel's efforts should not be second-guessed with the clarity of hindsight to determine how the defense might have been more effective" (*Benevento* at 712). Indeed, "a reviewing court must avoid confusing 'true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis' " (*id.*, quoting *Baldi* at 146). Instead, " 'it is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations' for counsel's alleged shortcomings"

(*id.,* quoting *People v Rivera,* 71 NY2d 705, 709 [1988]). "A single error may qualify as ineffective assistance, but only when the error is sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial" (*Caban,* 5 NY3d at 152).

In this case, the sole defense at trial was that defendant committed a larceny, but not a robbery, in that he never possessed a box cutter during his theft at the Duane Reade store. The People's contrary evidence that he *did* have a box cutter consisted of the store employees' eyewitness testimony, defendant's confession, the recovery of a box cutter from the street and the police officers' testimony concerning their observations of a surveillance video. Because there was no apparent basis to exclude the eyewitness testimony and the introduction of the box cutter, the two remaining options available to defense counsel were to move to exclude the testimony regarding the surveillance videotape, if offered, and to move to suppress the confession as involuntary. However, due to counsel's errors, neither objective was effectively pursued.

First, with respect to the police testimony about the videotape, we find that counsel committed egregious and prejudicial error in failing to investigate the contents of the videotape, and then, without knowing what was on it, inadvertently opening the door to damaging testimony by Harper about its contents. "[I]t is elementary that the right to effective representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and the facts relevant to the defense" (*People v Droz,* 39 NY2d 457, 462 [1976]; *People v Bussey,* 6 AD3d 621, 623 [2004], *lv denied* 4 NY3d 828 [2005]). Here, defense counsel completely failed in his duty to investigate the contents of a videotape disclosed by the People. The People's voluntary disclosure form (VDF) indicated the existence of "tapes or other electronic recordings," with an instruction that "[c]ounsel should contact the assigned [ADA] to arrange a mutually convenient time to listen to the tapes or provide a blank tape for copying." Defense counsel neither requested the tape nor provided a blank copy to the assigned prosecutor, claiming that he believed the reference to "tapes or other electronic recordings" referred only to audiotape recordings. Thus, at the time the trial commenced, defense counsel was completely unaware of the existence of a surveillance videotape of this incident.

Despite this ignorance, counsel raised the issue of a videotape in his opening statement:

"And you have already heard the district attorney tell you during jury selection that there is no fingerprint evidence in this case. *And you did not hear the district attorney tell you about video footage from the Duane Reade store that will show you what happened or did not happen on December 14, 2002.*

"So there will be no direct evidence presented that Mr. Cyrus had a knife or box cutter" (emphasis added).

Later, the People called Officer Harper as their first police witness, but the videotape was never mentioned during his direct testimony. However, on cross-examination of Harper, defense counsel asked several questions regarding the surveillance video:

"Q: Did you view any videotape footage inside the Duane Reade store?

"A: Yes, I did.

"Q: Did you view that on December 14th?

"A: Yes, I did.

"Q: And did that videotape depict the alleged incident in this case?

"A: Yes, it did.

"Q: Did you or anybody else from the NYPD preserve a copy of that video footage for evidence?

"A: I believe so, yes."

After a few more questions establishing that the police or prosecutor secured a copy of the video from Duane Reade, counsel finished his cross-examination of Harper. On redirect, the prosecutor wasted little time capitalizing on the mistake:

"Q: You mentioned that you viewed the videotape in this case?

"A: Yes, I did.

"Q: Can you tell us what you saw on the video tape?

"A: I saw a person—The view that I saw was exiting the store, right at the entrance but from inside the store going out. . . .

"The video was black and white but I saw a person dressed in dark clothing, dark jacket, exiting the

store with several items in his hand. And Mr. Sita apparently tried to stop him.

"I saw the person in the dark clothing raise his right hand, and you could see like sort of a metallic object in his hand, at which point Mr. Sita just sort of stepped off to the side. . . .

"Q: Now, since the day that you viewed that videotape in the store, have you ever viewed that videotape again?

"A: I tried to.

"Q: And were you able to?

"A: No, I was not.

"Q: Do you know why not?

"A: Because it wasn't visible. The tape was no good. It was a digital disk and I guess the copy was copied wrong."

Defense counsel did not object to this testimony, but after Harper's testimony was concluded, counsel moved for a mistrial based on the ground that "video footage was turned over to the District Attorney's Office that was never turned over to me." The prosecutor responded that "there is nothing to turn over" because "there's no image" on the DVD. After chiding the prosecutor that "the best approach I think is to tell defense counsel early on," the court directed the prosecutor to turn the DVD over to the defense, and reserved decision on the motion for a mistrial.

Subsequently, Officer Accomando was permitted to testify on direct examination, without objection by defense counsel, that the videotape showed defendant with "a silver object, what later on I knew to be a knife."

After both sides rested, counsel moved to strike all testimony regarding the officers' observations of the videotape. He argued that the People had a duty to preserve the videotape and that the People's VDF was insufficient to put him on notice that it existed. The court responded by noting that he had opened the door to this testimony, since he was the first to bring it up on cross-examination of Harper. The prosecutor argued that the VDF and the list of *Rosario* material adequately disclosed the existence of the tape, and that the prosecution did attempt to preserve the evidence, which was inadvertently deleted by Du-

ane Reade. The prosecutor further argued that "there was nothing on the People's case that brought in any mention of that videotape . . . but now that counsel opened the door to it . . . all that testimony should come in." Ultimately, the court stated that it would review the record and issue a ruling on the next court date, prior to summations and charge. However, no ruling was ever sought or issued on the record.

Appellate courts have found that a failure of defense counsel to investigate or take further action with respect to information disclosed in the People's VDF may, if sufficiently prejudicial to the defendant's defense or right to a fair trial, constitute the ineffective assistance of counsel (*see e.g. People v Echavarria*, 167 AD2d 138, 139 [1990] [counsel failed to move for a *Wade* hearing despite VDF disclosure of lineups and photo viewings]; *People v Donovan*, 184 AD2d 654, 654-655 [1992] [failure to move to suppress drugs that VDF disclosed were recovered from defendant]).

In this case, there is no rational justification for not investigating the videotape disclosed in the VDF. Although counsel may not have appreciated that "tape recordings" include videotapes, that erroneous assumption is not excusable. The People disclosed that they had a tape recording relevant to the case in their possession and it was counsel's affirmative duty to investigate what was on it, irrespective of the format. Had counsel conducted a proper investigation, he would have been able to prepare his trial strategy based on known facts, instead of simply improvising during trial.

The prejudice flowing from counsel's failure to investigate the contents of the videotape was compounded by counsel's even worse decision to ask Harper about it. The prosecutor had elicited no direct testimony from Harper about the videotape, giving counsel no reason to believe that it would be introduced at trial. Nevertheless, acting on a "hunch" that the store might have had a surveillance camera, counsel asked Harper on cross-examination whether he viewed any videotape at Duane Reade and whether it depicted the incident in this action. Regrettably for defendant, counsel's hunch was perfectly accurate, as the store did have a surveillance videotape and it depicted his client brandishing a metallic object before fleeing the store.

Opening the door to the admission of damaging testimony against the accused, especially when due to a lack of investigation of the facts, has often led to a finding of ineffective assistance of counsel (*People v Droz*, 39 NY2d at 461-462 [ineffective

assistance where counsel's lack of preparation led to opening door to highly prejudicial evidence]; *see also People v Cortez*, 296 AD2d 465, 465-466 [2002]; *People v Wiggins*, 213 AD2d 965, 966 [1995]). Here, the testimony by two police officers that they observed a metal object in defendant's hand on the video provided powerful and objective corroboration of the testimony of the two store employees, and doubled the number of witnesses who saw defendant holding a metal object. In addition, unlike the testimony of live witnesses that can be impeached by effective cross-examination, the officers' testimony regarding their observations of the video was virtually unimpeachable, due to the destruction of the original videotape. Here, with one misguided line of questioning, the defense that defendant did not have a box cutter was obliterated.

The motion court's finding that counsel had a "tactical reason" for making the inquiry is clearly refuted by the record (*see People v Noll*, 24 AD3d 688, 689 [2005] [failure to request *Huntley* hearing was not strategic decision, where counsel was unaware that defendant made statements to law enforcement officials]). During his motion to strike the testimony, counsel admitted on the record that he "inadvertently" opened the door to the testimony, and that "I should have done more careful investigation and that my opening the door was ineffective assistance of counsel."

Nor does the fact that defendant may have told counsel that he did not use a box cutter transform an uninformed decision into a tactical one. Even if defendant made such a statement, counsel was on notice that there was conflicting evidence on this point, and therefore should have been aware of the possibility that the videotape might not support defendant's claim that he did not possess a box cutter. Under these circumstances, defense counsel's duty to investigate should not be defined exclusively by what defendant told him, but rather by all of the facts known to him regarding the making and the contents of the videotape. No reasonably competent attorney would have asked the officers about the videotape without having previously investigated its contents.

The People's argument that any error was harmless because they would have introduced this evidence on their direct case is refuted by the record. Indeed, the prosecutor's failure to raise the videotape during Harper's direct examination is persuasive evidence that she had no intention of introducing it on the People's case. Further, when defense counsel objected to the

testimony and moved for a mistrial, the prosecutor never argued that she intended to introduce the evidence on her direct case; rather, she emphasized that the testimony regarding the videotape was first introduced by defense counsel, who "opened the door."

In any event, the testimony was likely inadmissible on the People's direct case, since the officers' testimony concerning their observations of a poor quality videotape, depicting a crime they did not witness, would violate the best evidence rule (see *People v Jimenez*, 8 Misc 3d 803, 804-806 [Sup Ct, Bronx County 2005] [testimony of observations from lost surveillance videotape precluded under best evidence rule since it was not a reliable and accurate portrayal of the original]; cf. *People v Manohar*, 40 AD3d 1123, 1124 [2007], *lv denied* 9 NY3d 878 [2007] [although trial court precluded garage employee's testimony of observations on surveillance video under best evidence rule, defendant opened door to testimony by specifically denying the alleged criminal acts]).

A second serious error committed by defense counsel was his failure to adequately introduce the circumstances of defendant's interrogation and confession before the suppression court and to make viable suppression arguments based thereon. As the hearing transcript shows, counsel's lack of preparation or sheer incompetence constituted a virtual surrender to the admission of the confession. The record on appeal reveals ample facts that might have supported viable arguments for suppression: defendant was in police custody for 17 hours before he was given *Miranda* warnings and made an inculpatory statement; he did not sleep for long periods of this detention; he was suffering from heroin withdrawal at the time of his statement, and so informed the police; he was questioned on more than one occasion prior to receiving any *Miranda* warnings, and told counsel of this fact; he was not arraigned until 30 hours after his arrest; and he alleged that Officer Accomando induced him to falsely confess to using a box cutter in order to obtain leniency.

Despite this ample foundation, counsel's performance at the suppression hearing was abysmal. He asked no questions at all concerning defendant's lack of sleep or heroin withdrawal. Nor did he raise the issue of Accomando's inducement to give false testimony, apparently reserving these arguments for trial. Even more puzzling is that despite the lengthy duration of defendant's prearraignment custody, and the allegation of pre-*Miranda* questioning by the police, counsel failed to thoroughly examine

the exact time periods and precise nature of each round of questioning in order to flesh out the details for a possible *Miranda* violation or delay-in-arraignment claim. In short, instead of developing a record that would have supported one or more colorable arguments that defendant's confession was involuntary and should be suppressed, counsel raised patently frivolous arguments concerning the officers' credibility on matters such as the direction in which the police car was traveling and the exact amount of time between the robbery and the arrest.

The failure to raise or adequately pursue a viable suppression claim may constitute the ineffective assistance of counsel (*see People v Johnson*, 37 AD3d 363, 364 [2007] [counsel conceded all suppression claims]; *People v Miller*, 11 AD3d 729, 730 [2004] [failure to move for *Huntley* hearing]. Although none of the arguments available to defendant may have been clear-cut winners, they certainly were colorable and if raised together at the *Huntley* hearing would have made a strong argument for suppression. Indeed, at least one court has found that evidence that a confessing defendant was suffering from heroin withdrawal is an important factor in determining whether a confession was involuntary (*see People v Johnson*, 168 Misc 2d 81, 88-90 [Sup Ct, Kings County 1995]), as, of course, is a lack of sleep during the course of a lengthy detention (*see People v Anderson*, 42 NY2d 35, 39-40 [1977]; *People v Leonard*, 59 AD2d 1, 12-13 [1977]). Similarly, courts have consistently held that a long period of prearraignment delay is also a primary consideration in determining the voluntariness of a confession (*People v Ramos*, 99 NY2d 27, 35 [2002]; *People v Holland*, 48 NY2d 861 [1979]). In addition, because counsel was allegedly made aware of significant pre-*Miranda* questioning, an obvious argument to be made was that defendant's waiver of *Miranda* rights and subsequent confession were tainted by the pre-*Miranda* interrogation, justifying preclusion of all post-*Miranda* statements (*see People v Bethea*, 67 NY2d 364, 367-368 [1986]). Notably, not a single one of these arguments, which were supported by facts existing in either the trial record or the submissions on the CPL 440.10 motion, was made at the *Huntley* hearing.

Counsel's performance was only marginally better at trial. While defendant testified in some detail about Accomando's encouragement that he falsely implicate himself in the possession of a box cutter, such was the extent of counsel's "attack" on the voluntariness of the confession. He never raised the issue of heroin withdrawal and asked only one or two questions

about defendant's lack of sleep. Counsel's decision to raise the issue of lack of sleep and inducement of a false confession at trial also provokes the question of why these arguments were never raised at the hearing. At the very least, it would seem a highly questionable decision to essentially concede the admissibility of the confession at a *Huntley* hearing and then offer a lukewarm challenge to its voluntariness before the jury.

While counsel's feeble attempt to exclude the confession may not alone have constituted ineffective assistance of counsel, when considered along with his error regarding the videotape, we find that defendant did not receive meaningful representation. We note that had defense counsel succeeded in having the confession and surveillance video excluded, it would have significantly enhanced the credibility of his summation argument that the box cutter accusation was made up by the store manager, who was embarrassed that he had permitted the "unarmed" defendant to leave his store without being stopped. With defendant's confession and the testimony of the video in evidence, this argument did not stand a chance.

Finally, defendant was not required to show that he would have been acquitted "but for" counsel's errors (*People v Turner*, 5 NY3d 476, 480 [2005]; *cf. Strickland v Washington*, 466 US 668 [1984]). Under this state's *Baldi* standard, "a defendant need not fully satisfy the prejudice test of *Strickland*" (*People v Stultz*, 2 NY3d 277, 284 [2004]), as the "focus is on the fairness of the proceedings as a whole" (*id.*).*

Defendant's remaining claims are either unpreserved or without merit.

Accordingly, the order of the Supreme Court, New York County (Bruce Allen, J.), entered on or about January 27, 2006, which denied defendant's CPL 440.10 motion to vacate a judgment of the same court and Justice, rendered December 12, 2003, convicting defendant, after a jury trial, of robbery in the first degree and criminal possession of a weapon in the third degree, and sentencing him, as a persistent violent felony offender, to concurrent terms of 20 years to life and 12 years to life, respectively, should be reversed, on the law, the motion

---

* There is additional evidence in the record, including trial counsel's admissions, that he was inexperienced in criminal matters, "overwhelmed" by his caseload and "distracted" by his own divorce proceedings at the time of defendant's trial. While these facts support our ruling, we do not rely on them in reaching our conclusion that defendant was deprived of meaningful representation at his trial.

granted and the matter remanded for a new trial, preceded by a new suppression hearing. The appeal from the judgment of conviction should be dismissed as academic.

MAZZARELLI, J.P., ANDRIAS, CATTERSON and MALONE, JJ., concur.

Order, Supreme Court, New York County, entered on or about January 27, 2006, reversed, on the law, defendant's CPL 440.10 motion granted and the matter remanded for a new trial, preceded by a new suppression hearing. Appeal from judgment, same court, rendered December 12, 2003, dismissed as academic.