■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOETTA DEAN, Appellant. [856 NYS2d 649]—

Appeal by the defendant from a judgment of the County Court, Nassau County (Berkowitz, J.), rendered May 24, 2006, convicting her of a course of sexual conduct against a child (three counts) and sexual abuse in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and the matter is remitted to the County Court, Nassau County, for a new trial before a different judge.

The defendant was convicted of a course of sexual conduct against a child (three counts) and sexual abuse in the second degree arising from an alleged course of conduct over a period of years during which time she is said to have sexually abused two of her children. The defendant contends that she was denied the effective assistance of trial counsel (*see* US Const, 6th Amend; NY Const, art I, § 6).

In an adversarial system of justice, the fundamental right to the effective assistance of counsel is essential to a criminal defendant's due process entitlement to a fair trial (*see People v Benevento,* 91 NY2d 708, 711 [1998]; *People v Claudio,* 83 NY2d 76, 80 [1993]). In reviewing the defendant's contention, we are

guided by the instructions "to avoid both confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis" (*People v Baldi*, 54 NY2d 137, 146 [1981]; *see People v Stultz*, 2 NY3d 277, 284 [2004]) and to view the record in its totality in order to determine whether the defendant was denied meaningful representation (*see People v Benevento*, 91 NY2d at 712; *People v Baldi*, 54 NY2d at 147). Upon our review of the totality of the record we find that defense counsel engaged in "an inexplicably prejudicial course" of conduct throughout the trial, as opposed to merely misguided tactical errors, the cumulative effect of which was to deprive the defendant of the effective assistance of counsel and her right to a fair trial (*People v Zaborski*, 59 NY2d 863, 865 [1983]; *see People v Cortez*, 296 AD2d 465, 466 [2002]).

Here, the ineffective assistance of trial counsel commenced from the opening statements. The defendant correctly contends that defense counsel erroneously assumed the burden of proof when he made the following representation to the jury: "[W]e're going to prove to you not only that the People can't prove guilt beyond a reasonable doubt, *we're going to prove to you that she's innocent*" (emphasis added). It is impossible to reconcile defense counsel's assumption of the burden of proving the defendant innocent with the defendant's constitutional right to the presumption of innocence. Notwithstanding the trial court's correct charge to the jury on the burden of proof, her counsel's impermissible assumption of the burden of proof (*see People v Daley*, 172 AD2d 619 [1991]; *see also People v Pagan*, 2 AD3d 879, 880 [2003]) was so egregious and prejudicial that it contributed to the deprivation of the defendant's right to a fair trial (*see People v Turner*, 5 NY3d 476, 480-481, 484 [2005]; *People v Caban*, 5 NY3d 143, 152 [2005]; *cf. People v Hobot*, 84 NY2d 1021, 1024 [1995]; *People v Flores*, 84 NY2d 184, 188-189 [1994]).

In addition, defense counsel failed to fulfill his "duty to protect the interests of his client . . . [in that he failed to follow] . . . the required and proper practice" which is for counsel to object to the prosecutor's improper statements (*People v De Jesus*, 42 NY2d 519, 526 [1977]). Indeed, the absence of a timely and specific objection fails to preserve the issue of the propriety of a prosecutor's statement to the jury for appellate review (*see generally* CPL 470.05 [2]; *People v Thompson*, 27 AD3d 495, 496 [2006]). During her opening statement, the prosecutor improperly advised the jury that the father was awarded exclusive custody of the children in a separate proceeding in the Family Court. Notwithstanding the lower standard of proof in the

custody proceeding, the lack of the identity of issues, and the absence of the same rights of confrontation (*cf. People v Goodman*, 69 NY2d 32, 40 [1986]; *People v Cortes*, 4 Misc 3d 575, 590 [2004]), defense counsel inexplicably failed to object to the prosecutor's statement, request a curative instruction, and move for a mistrial (*see generally People v Fleegle*, 295 AD2d 760, 763 [2002]; *see also People v Montgomery*, 22 AD3d 960, 962-963 [2005]). To the contrary, defense counsel compounded the error in his own opening statement by conceding that the determination was within the Family Court's "prerogative," thereby lending credibility to its determination.

Defense counsel's deficient representation with respect to the opening statements was further exacerbated by his failure to object to certain unduly prejudicial testimony (*see People v Lindo*, 167 AD2d 558 [1990]) during the direct examination of the Family Court Judge who had presided over the custody proceeding. During his direct examination, the Family Court Judge testified, without objection, as to the defendant's admission in the custody proceeding regarding certain questionable sleeping arrangements involving the defendant and her children and how that factored into his custody determination. Moreover, after the father testified, again without objection, that the Family Court had awarded him custody of the children, defense counsel, in his closing statement, merely made light of the custody award by arguing that it was the Family Court's "call."

Although the mother's admission in the custody proceeding as to the sleeping arrangements (*see People v Caban*, 5 NY3d at 151) was relevant background information necessary to complete the narrative (*see People v Philips*, 30 AD3d 618, 619 [2006]), defense counsel should have objected to the jury's having been advised of the ultimate custody determination as it was irrelevant to a determination of the defendant's guilt (*cf. People v Goodman*, 69 NY2d at 40; *People v Cortes*, 4 Misc 3d at 590). The record reveals that defense counsel may have decided to forgo a well-placed objection because he intended to contest the significance of the custody award. However, he was unable to do so because he failed to obtain an advance ruling from the court allowing him to advise the jury during his opening statement that a forensic psychiatrist and the attorney for the children each had recommended that custody of one of the infant children be awarded to the defendant based, in part, on the child's expressed desire to remain with the defendant. Defense counsel was similarly precluded from pursuing this line of inquiry when he had the opportunity to cross-examine the father. Under these circumstances, defense counsel's failure to object

was not an "objectively reasonable and legitimate trial strategy" (*People v Berroa*, 99 NY2d 134, 138 [2002]) or merely misguided strategic calculations (*see People v Bell*, 48 NY2d 933, 935 [1979]), but rather demonstrated a failure to properly comprehend the tactical process necessary to set the stage for the defense.

Defense counsel also failed to recognize the strategic significance of acceding to the People's proposed stipulation of facts regarding the questionable sleeping arrangement or submit a counterproposal thereto which would have obviated the "prejudicial impact" of the Family Court Judge's testimony bolstered by the prestige of his office and his impressive credentials (*People v Alford*, 33 AD3d 1014, 1015 [2006]). Instead, the cumulative effect of these errors (*see People v Zaborski*, 59 NY2d at 865; *People v Cortez*, 296 AD2d at 466) was that the jury was left with the impression that a highly-experienced Judge of the Family Court found the defendant to be an unfit mother and in all probability relied on that testimony in reaching its verdict (*see People v Fleegle*, 295 AD2d at 763).

During his opening statement, defense counsel also erroneously promised the jury that he was going to prove that the children were having consensual sex with each other and that the stepmother discovered them doing so, again without getting an advance ruling on the admissibility of this highly salacious testimony. After several attempts to elicit this testimony from one of the children were thwarted by the sustained objections of the prosecutor, defense counsel failed to make an offer of proof or otherwise demonstrate how this evidence was relevant to the credibility of the witnesses or the issue of the defendant's guilt or innocence (*see People v Brown*, 300 AD2d 314, 315 [2002]). In the absence of a timely motion in limine to establish the propriety of this line of inquiry, defense counsel's assumption of the burden of proving that the children were engaged in consensual sexual conduct was not a reasonably plausible defense strategy (*see People v Berroa*, 99 NY2d 134 [2002]; *People v Flores*, 84 NY2d 184 [1994]; *People v Droz*, 39 NY2d 457, 462 [1976]; *People v Bartley*, 298 AD2d 160 [2002]; *People v Rojas*, 213 AD2d 56, 66-68 [1995]; *People v Schelling*, 92 AD2d 694, 694-695 [1983]) but, again, only served to demonstrate that he failed to adequately comprehend the tactical process necessary to set the stage for his defense or consider the unduly prejudicial consequences of his actions.

The foregoing highly prejudicial errors of trial counsel were exacerbated by his badgering of the complaining witnesses and flouting of the judge's rulings, and the "pitched battles" be-

tween defense counsel and the trial judge, some of which were in the presence of the jury. While the trial court's response was, in many respects, understandable and excusable in light of defense counsel's behavior (*see People v Martin*, 33 AD3d 1024, 1024-1025 [2006]; *People v Jenkins*, 25 AD3d 444, 445 [2006]; *People v Straniero*, 17 AD3d 161, 162 [2005]), the *"fairness of the process* as a whole" was compromised by the combination of defense counsel's conduct and the response of the trial court (*People v Benevento*, 91 NY2d at 714 [emphasis added]; *see People v De Jesus*, 42 NY2d 519 [1977]).

We see "no constructive purpose in repeating each of defense counsel's disrespectful comments" or instances of inappropriate cross-examination; nor shall we recite the prejudicial colloquy between the court and defense counsel, as we are not concerned with assessing relative levels of blame (*People v Torres*, 182 AD2d 461, 461-462 [1992]). Rather, our principal consideration is whether the defendant received a fair trial (*see People v Benevento*, 91 NY2d at 714; *People v De Jesus*, 42 NY2d at 520; *People v Torres*, 182 AD2d 461 [1992]).

We do not find that any single example of deficient representation was sufficient to deprive the defendant of the effective representation of counsel (*cf. People v Turner*, 5 NY3d at 480-481; *People v Caban*, 5 NY3d at 152). Rather, we conclude that, given the totality of her counsel's deficient representation, the defendant was denied meaningful representation (*see People v Baldi*, 54 NY2d at 147). Moreover, the manner in which the trial was conducted overshadowed the allegations involved such that the jury was likely to be distracted from its principal function, the determination of the guilt or nonguilt of the defendant, particularly where, as here, that determination hinged on sharp issues of credibility (*see People v De Jesus*, 42 NY2d 519 [1977]; *People v Torres*, 182 AD2d at 462; *see also Eze v Senkowski*, 321 F3d 110, 135-136 [2003]; *Rivas v Brattesani*, 94 F3d 802, 808 [1996]).

We need not comment or pass on the quality or strength of the People's case where, as here, the conduct of the trial, when viewed as a whole, evinces such undue prejudice to the defendant that she was deprived of her constitutional entitlement to a fair trial (*see People v Mees*, 47 NY2d 997, 998 [1979]; *People v Retamozzo*, 25 AD3d 73 [2005]; *see also People v Alicea*, 37 NY2d 601, 603-604 [1975]; *People v Steinhardt*, 9 NY2d 267, 271-272 [1961]; *People v Chatman*, 14 AD3d 620, 620-621 [2005]; *People v Grant*, 185 AD2d 896, 897 [1992]).

Accordingly, the defendant's judgment of conviction must be reversed and the matter remitted to the County Court, Nassau County, for a new trial before a different judge.

In light of our determination, we need not reach the defendant's remaining contentions. Rivera, J.P., Skelos, Lifson and Balkin, JJ., concur.