■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAPHETH CLARKE, Appellant. [886 NYS2d 753]—

Appeals by the defendant (1) from a judgment of the Supreme Court, Queens County (Kron, J.), rendered February 3, 2005, convicting him of attempted murder in the second degree, criminal possession of a weapon in the second degree, and assault in the second degree, upon a jury verdict, and imposing sentence, and (2), by permission, from an order of the same court dated December 21, 2007, which denied, without a hearing, his motion pursuant to CPL 440.10 to vacate the judgment of conviction rendered February 3, 2005.

Ordered that the judgment is reversed, on the law, and the matter is remitted to the Supreme Court, Queens County, for a new trial; and it is further,

Ordered that the appeal from the order is dismissed as academic in light of our determination on the appeal from the judgment.

In 2005 the defendant was convicted, after a jury trial, of attempted murder in the second degree, assault in the second degree, and criminal possession of a weapon in the second degree, arising out of an incident on October 20, 2003 wherein the defendant shot his former girlfriend's coworker and friend, the complainant Diego Villanueva. The defendant was sentenced to a term of eight years' imprisonment for attempted murder in the second degree, to run concurrently with determinate terms of imprisonment of five years and one year on the weapons' possession and assault charges, respectively.

On his direct appeal from the judgment of conviction, the defendant contends, inter alia, that he was deprived of his constitutional right to the effective assistance of counsel (US Const, 6th Amend; NY Const, art I, § 6), based on a multitude of trial errors, including his counsel's failure to cross-examine witnesses, object to irrelevant or prejudicial evidence, present and argue a coherent defense strategy, and call the defendant as a witness on his own behalf. The defendant raised the same issues in support of his subsequent motion to vacate the judgment of conviction pursuant to CPL 440.10, which the Supreme Court denied without a hearing on December 21, 2007. This Court granted leave to appeal from the order denying the CPL 440.10 motion, and subsequently consolidated the appeals from

the judgment and the order. Upon our review of the alleged errors for which sufficient facts appear on the record to permit adequate review, we reverse the judgment on direct appeal, and dismiss the appeal from the order as academic in light of this determination (see *People v Brown*, 300 AD2d 314 [2002]; *People v Lindo*, 167 AD2d 558, 559 [1990]).

In an adversarial system of justice, the fundamental right to the effective assistance of counsel is essential to a criminal defendant's due process entitlement to a fair trial (see *People v Caban*, 5 NY3d 143, 152 [2005]; *People v Benevento*, 91 NY2d 708, 711 [1998]; *People v Claudio*, 83 NY2d 76, 80 [1993]; NY Const, art I, § 6). "In reviewing the defendant's contention, we are guided by the instructions 'to avoid both confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis' " (*People v Dean*, 50 AD3d 1052, 1052-1053 [2008], quoting *People v Baldi*, 54 NY2d 137, 146 [1981]; see *People v Stultz*, 2 NY3d 277, 284 [2004]), and to view the record in its totality in order to determine whether the defendant was denied meaningful representation (see *People v Ennis*, 11 NY3d 403, 412 [2008], *cert denied* — US —, 129 S Ct 2383 [2009]; *People v Stultz*, 2 NY3d at 283; *People v Benevento*, 91 NY2d at 712; *People v Satterfield*, 66 NY2d 796, 798-799 [1985]). To prevail on a claim of ineffective assistance of counsel, "it is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations" for the alleged shortcomings of counsel (*People v Rivera*, 71 NY2d 705, 709 [1988]; see *People v Benevento*, 91 NY2d at 712; *People v Benn*, 68 NY2d 941, 942 [1986]; *People v Alford*, 33 AD3d 1014 [2006]). Indeed, "[a] single error may qualify as ineffective assistance, but only when the error is sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial" (*People v Caban*, 5 NY3d at 152; see *People v Cyrus*, 48 AD3d 150, 153 [2007]).

Upon our review of the totality of the record herein, we find that defense counsel engaged in "an inexplicably prejudicial course" of conduct throughout the trial, as opposed to merely misguided tactical errors, the cumulative effect of which was to deprive the defendant of the effective assistance of counsel and his right to a fair trial (*People v Zaborski*, 59 NY2d 863, 865 [1983]; see *People v Dean*, 50 AD3d at 1053; *People v Cortez*, 296 AD2d 465, 466 [2002]).

The trial record underscores defense counsel's meager efforts and unsuccessful attempts to cross-examine witnesses with respect to identification discrepancies of the perpetrator as well as events leading up to the shooting. The complainant stated in the police report that on the day of the incident he was "fol-

lowed to/from ATM/BA" to the driveway of his home, where he was shot by a "black," "male," named "UNK, Andrew." Subsequently and inconsistently, the complainant testified during a *Rodriguez* hearing (*see People v Rodriguez,* 79 NY2d 445, 450 [1992]) that the perpetrator was "interracial" and then went on to identify the defendant. At trial, the complainant hesitated in attributing a racial category or ethnicity to the perpetrator in response to questioning by the court, saying that he was "light skin, just a little bit dark," perhaps looking "Hispanic" or "Dominican." Defense counsel then abandoned this topic.

With respect to the events leading up to the shooting, while the complainant's police report indicated that he was followed by the perpetrator from his bank's automatic teller machine (ATM) to his residence, he did not provide this testimony on direct examination, instead testifying that he went directly home from work that night and was approached by the shooter while parking his car in his driveway. Despite this blatant discrepancy, defense counsel did not follow up with any cross-examination of the complainant on this issue.

While it is true that an attorney's trial strategy and "efforts should not be second-guessed with the clarity of hindsight to determine how the defense might have been more effective" (*People v Benevento,* 91 NY2d at 712; *see People v Aiken,* 45 NY2d 394, 399 [1978]; *People v Wagner,* 104 AD2d 457, 459 [1984]), where a witness has offered prior testimony which is significantly at odds with his or her trial testimony, the discrepancy can be used on cross-examination to cast doubt on the credibility of the witness (*see People v Brown,* 300 AD2d at 315). Instead of highlighting the discrepancies contained in the complainant's report to the police with his testimony at the *Rodriguez* hearing and at trial, defense counsel improperly failed to fully pursue these lines of questioning, particularly given the subsequent testimony of a defense eyewitness that the perpetrator was wearing a black mask and gloves fully covering his face and hands.

The record further shows that, during the course of the five-day trial, defense counsel failed to fulfill his "duty to protect the interests of his client [in that he failed to follow] the required and proper practice" which is for counsel to object to the people's introduction of inadmissible evidence and improper statements (*People v De Jesus,* 42 NY2d 519, 526 [1977]). Here, defense counsel did not object when, after the defendant's former girlfriend left the witness stand and the defense rested, the People belatedly offered into evidence her handwritten state-

ment to the police. This statement contained several prejudicial and inflammatory remarks against the defendant, among which were that he had made threats to kill her if she cheated on him, had slapped, pushed, and hit her in the past, and that she had asked him "what kind of drugs are you taking?" Not only did defense counsel fail to object to the late introduction of this highly prejudicial document, but he failed in any manner to seek to redact any objectionable statement contained therein (*see People v Alford,* 33 AD3d 1014, 1015-1016 [2006]).

Nor did defense counsel demonstrate vigilance in protecting the defendant's procedural and substantive rights by carefully objecting to errors during trial. Over the course of the five-day trial with seven witnesses, defense counsel objected to the presentation of evidence on only five occasions, despite the prejudicial or otherwise inadmissible proof presented by the People. Under these circumstances, defense counsel's failure to object was not an "objectively reasonable and legitimate trial strategy" (*People v Berroa,* 99 NY2d 134, 138 [2002]), or merely misguided strategic calculations (*see People v Bell,* 48 NY2d 933, 935 [1979]), but rather demonstrated a failure to properly comprehend the tactical process necessary to set the stage for the defense (*see People v Echavarria,* 167 AD2d 138, 140 [1990]), and preserve issues for appellate review (*see People v Gray,* 86 NY2d 10, 19 [1995]; *People v Thompson,* 27 AD3d 495, 496 [2006]; *People v Bell,* 18 AD3d 881 [2005]).

In conclusion, we do not find that any single example of deficient representation was sufficient to deprive the defendant of the effective representation of counsel (*see People v Dean,* 50 AD3d at 1053; *People v Cyrus,* 48 AD3d at 160; *People v Cortez,* 296 AD2d at 466). Rather, we conclude that, given the totality of his counsel's deficient representation, the cumulative effect of these errors deprived the defendant of a meaningful representation and a fair trial (*see People v Ennis,* 11 NY3d at 412; *People v Stultz,* 2 NY3d at 283-284; *People v Baldi,* 54 NY2d at 147). This is especially so where, as here, the determination of guilt in this one-witness identification case hinged on sharp issues of credibility (*see People v Robinson,* 260 AD2d 508, 510 [1999]; *People v Walters,* 251 AD2d 433, 435 [1998]).

Accordingly, the defendant's judgment of conviction must be reversed and the matter remitted to the Supreme Court, Queens County, for a new trial. In light of our determination, we need not reach the defendant's remaining contentions on the appeal from the judgment or on the appeal from the order denying the defendant's CPL 440.10 motion (*see People v Alford,* 33 AD3d at 1016). Skelos, J.P., Angiolillo, Balkin and Belen, JJ., concur.