■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWIN RAMIREZ, Appellant. [803 NYS2d 42]—

Judgment, Supreme Court, Bronx County (Roger S. Hayes, J.), rendered June 27, 2001, convicting defendant, after a jury trial, of robbery in the first degree and burglary in the first degree, and sentencing him to concurrent terms of 15 years, unanimously affirmed. Order, same court (Caesar D. Cirigliano, J.), entered on or about May 20, 2004, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, unanimously affirmed.

On this appeal, defendant asserts that he did not receive effective assistance of counsel as required by both the state and federal constitutions. This claim rests on counsel's failure to read defendant's arrest record before examining his wife. Counsel had the document before trial but because he did not examine it, he opened the door to testimony regarding defendant's prior arrest for domestic violence. Defendant contends that counsel's oversight constituted ineffective assistance.* His claim lacks merit.

At trial it was elicited that on November 1, 2000, Jocelyn Monegro moved into the upstairs apartment of a two-family home with her daughter Joanna Morales, her son Christian Morales and her then boyfriend Orlando Hurtado. Defendant, her boyfriend Hurtado's cousin, had assisted the family with the move. He was given keys to the apartment and paid $250 for his help. Approximately 2½ weeks later, Monegro and Orlando Hurtado fought and Hurtado moved out.

On November 25, 2000, Monegro was awakened at 2:30 A.M. when two men smashed through her bedroom door. One of the men held a pistol to Monegro's head and told her not to look at him. Holding her son Christian, she did as ordered. She testified that one man had a handkerchief around his head and the other had a t-shirt tied around his face. As one of the two was carrying a safe containing Monegro's jewelry, personal papers and other valuables out of her bedroom, the t-shirt slipped off his face. Monegro recognized defendant as her ex-boyfriend's cousin, who had helped her move.

Joanna Morales, Monegro's teenaged daughter, testified that she awoke when she heard her mother's door being smashed. She said that both perpetrators entered her bedroom. She recognized defendant, whose face was now uncovered, and he ordered her to lie down, to cover her face and not to look at him. He then began to rifle through her drawers. Monegro and

---

* After defendant was convicted, counsel made a posttrial CPL 440.10 motion raising a claim of ineffective assistance on the same basis as raised at trial. The court denied the motion. Leave to appeal was granted by this Court and that appeal was consolidated with the direct appeal from the conviction.

her son had followed the intruders into her daughter's bedroom and were screaming. Mother and daughter both testified that the defendant told his accomplice "Kill her [the mother]. Kill her. We cannot leave her alive," but the accomplice refused to do so.

Mrs. Figueroa, a downstairs neighbor, heard the commotion and began to bang on the ceiling with a broom. She also called 911. Fearing police, defendant and his accomplice fled. Police, who responded to the 911 call, noted that there was no sign of forced entry. Monegro told them that defendant was one of the men who had robbed her, and she gave the police his address which she had found among her former boyfriend's belongings. Defendant was subsequently arrested, and both Ms. Monegro and Joanna Morales identified him in a lineup.

Defendant presented his wife as an alibi and character witness. Mrs. Ramirez testified that defendant was with her at home on the night of the crime. She stated that her husband had never "shown violence to her or anyone else" and had never been arrested. On cross-examination, the People asked Ramirez about having accused defendant of assaulting her. Mrs. Ramirez first denied any incident, then explained that she and her husband "had a little dispute and [she] exaggerated about certain things and [she] pressed charges on him." However, she stated that the day after her argument with defendant "[she] went and dropped the charges and [she] went to pick him up." She also testified that she has lived with defendant consistently since that time, without incident.

Before the conclusion of the People's cross-examination of defendant's wife, defense counsel requested a sidebar, and asked to be relieved for ineffective assistance based upon his failure to review defendant's prior arrest report. The court denied the application, specifically telling counsel: "You have been a competent, prepared lawyer. You've gotten adjournments when you needed them. And this is simply a matter that the witness and your client may not have been candid with you. So your motion for mistrial or to be released is denied."

After Mrs. Ramirez was excused, the court gave a limiting instruction, ordering the jury not to infer from the alibi witness's testimony that defendant was inclined or likely to commit a criminal act. The court specifically stated that the evidence offered on cross-examination of Mrs. Ramirez could only be used to evaluate her credibility.

Defendant also took the stand, and his account of his prior arrest was consistent with that of his wife. He also testified that he was at home with his wife at the time that this crime was

committed. The court gave another limiting instruction warning the jury that it could not infer from the prior arrest that defendant had a propensity to commit criminal acts.

To prevail on a claim of ineffective assistance of trial counsel, a defendant must establish that he was denied a fair trial by less than "meaningful representation" (*People v Caban*, 5 NY3d 143, 152 [2005]). The Court of Appeals has held that "[a] single error may qualify as ineffective assistance, but only when the error is sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial (*see People v Hobot*, 84 NY2d 1021, 1022 [1995]; *People v Flores*, 84 NY2d 184, 188 [1994])" (*Caban, supra* at 152). While our "meaningful representation" standard has a prejudice component, the state standard differs from the federal rule in that it focuses on the "fairness of the process as a whole rather than [any] particular impact on the outcome of the case" (*People v Benevento*, 91 NY2d 708, 714 [1998]; *compare Strickland v Washington*, 466 US 668 [1984] [federal standard]).

Defendant alleges that his counsel's errors effectively denied him a fair trial. However, the trial record, viewed in totality and as of the time of the representation, establishes that counsel provided defendant with meaningful representation (*People v Baldi*, 54 NY2d 137, 147 [1981]).

Counsel's failure to review the arrest record does not establish, based on the record before us, that defendant's right to adequate representation was compromised (*Hobot, supra* [counsel's failure to familiarize himself with exculpatory document not ineffective assistance where counsel was competent in all other respects and document would not have conclusively refuted People's case]).

Defense counsel vigorously represented defendant's interests by making pretrial motions. He succeeded in having the 911 tape suppressed, and diligently cross-examined all of the People's witnesses. In addition to offering the alibi, counsel pursued another strategy. He attempted to implicate defendant's cousin Orlando Hurtado, Monegro's ex-boyfriend. He showed that Hurtado had a proclivity towards violence, a motive to commit this crime, and opportunity, because he too had keys to the apartment. Counsel sought to convince the jury that Hurtado, not defendant, was the perpetrator of the crime, or that it was committed at Hurtado's behest by another.

Further, the defense was not necessarily undermined by admission of the arrest report. Counsel elicited from defendant's wife that her report was generated based upon her "exaggerated" allegations that her husband had assaulted her, and that

she declined to press charges. Further, both defendant and his wife were consistent in their testimony that at the time the instant crime was committed, they were together at home.

Moreover, the evidence of defendant's guilt was overwhelming (*see People v Chicas*, 293 AD2d 687 [2002], *lv denied* 98 NY2d 695 [2002] [imperfections in trial counsel's performance did not constitute ineffective assistance where evidence of the defendant's guilt was overwhelming]; *compare People v Jenkins*, 68 NY2d 896 [1986] [ineffective assistance where counsel failed to present evidence of witness's prior misidentifications to challenge People's evidence where only proof linking defendant to crime was identification by that same witness]; *People v Fogle*, 307 AD2d 299 [2003] [ineffective assistance not to have investigated two eyewitnesses who identified the perpetrator as an individual other than the defendant, where the inculpatory evidence was weak]). The People presented two eyewitnesses, both of whom had met defendant weeks earlier. Both identified defendant in a lineup and at trial as one of the individuals who threatened them with a weapon and stole property from their home. The People also offered evidence that defendant had keys to the apartment and knew that they had valuable possessions because he had helped the family move into the apartment weeks earlier. While defense counsel attempted to implicate Orlando Hurtado, the record contains no evidence connecting him to the crime.

Accordingly, although counsel's efforts to exonerate defendant proved futile, review of the record reveals that defendant received effective assistance of counsel under both the state and federal standards. We have considered and rejected defendant's remaining claims. Concur—Tom, J.P., Mazzarelli, Andrias, Friedman and Catterson, JJ.