OPINION OF THE COURT
Acosta, J.
The issue in this case is whether defendant’s counsel was ineffective as a result of his failure to request that the court charge the jury on criminally negligent homicide as a lesser included offense of manslaughter in the second degree, the offense of which he was convicted. We find that the record before us is insufficient to deem trial counsel ineffective.
Background
Defendant was indicted for the crimes of murder in the second degree (two counts), manslaughter in the first degree and endangering the welfare of a child, for causing four-year-old Quachaun B.’s death on January 30, 2006. Quachaun lived with his 26-year-old mother, Aleshia Smith, defendant, who was his mother’s 18-year-old boyfriend, and his four sisters, ages 12, 11, 6 and 1.
Quachaun’s 11-year-old sister Nyeshia testified that on January 27, 2006, as Quachaun climbed on furniture in the bedroom, he fell and landed on his back and a television fell on him. Defendant, who was babysitting, began pushing on the child’s chest and blowing air through his mouth. When Quachaun woke up, defendant placed him on a bunk bed, sat down behind him and wrapped both hands around the child’s neck. He then started banging both sides of the child’s head against the wall. Quachaun started to cry and then stopped moving. When Smith came home, Nyeshia told her what happened, but Smith did not take Quachaun to the hospital.
The following day, Quachaun vomited in the family car on the way to an outing. Although Nyeshia pleaded with her mother to *316 take him to the hospital, Smith left him with a babysitter while the rest of the family continued on their outing. Defendant was away that day but returned that evening and repeatedly struck Quachaun with his hands and a plastic bat. That evening, Nyeshia saw long black and blue lines on Quachaun’s body. He had stopped talking and was moaning repeatedly.
Quachaun’s condition worsened the following day, but Smith went to a party in the evening and left the children with defendant. Once again, according to Nyeshia, defendant beat Quachaun with his hands and a bat and banged Quachaun’s head against the wall because Quachaun did not eat his food.
Later that night, Nyeshia saw defendant “holding [Quachaun’s] waist and . . . throwing him up and catching him.” She testified that defendant was trying to revive him but Quachaun did not respond. Defendant then began hitting Quachaun in the back with the plastic bat until Nyeshia carried the child to bed.
At 2:35 a.m. on January 30, Smith called 911 and reported that a television had fallen on her son. Defendant took the phone and said that it looked like the child was not breathing and that he was dead. Defendant also told the operator that a television had fallen on the child, but that the child “came out of it ok,” that he was sleeping very well, was calm, but that “today” he was lying in bed and that defendant was checking on him all the time because he “looks a little beaten up.” Defendant added that the child had had a seizure that day and that he had bitten his tongue, twisted his hands and feet and stopped breathing.
A paramedic who responded to the apartment testified that defendant told him in broken English that Quachaun was playing with the other children so he went out for a while and returned to find Quachaun unconscious. When the paramedic asked if Quachaun had been ill, defendant told him that a television had fallen on Quachaun the day before, but that he had taken him to the hospital and that the hospital had released him. Defendant, however, told the EMS supervisor that Quachaun seemed fine after the television accident so he was not taken to the hospital.
On January 31, defendant gave several statements at the precinct. First, he stated that a television set had fallen on Quachaun that Saturday (January 28), but since he looked fine afterwards, he was not taken to the hospital. Four hours later, when Quachaun broke defendant’s stereo defendant struck him *317 four times with a belt and seven times with his hand. On Sunday (the 29th), defendant noticed that Quachaun was “drooling a lot” during his bath. After the bath, Quachaun “hit himself in the back of the head” so defendant told Smith to call for an ambulance. Defendant added that he took medication for epilepsy, which made him “aggressive,” and that he had a bad temper.
Defendant also made a videotaped statement with the aid of a Spanish interpreter, where he repeated much of what he had stated earlier, and elaborated on what happened when Quachaun allegedly broke his stereo. After he hit Quachaun four times on the leg with a belt, Quachaun “talk[ed] bad” to him, which caused defendant to go “blind” and to strike “seven blows like crazy” with his open hand. Defendant maintained that he then put Quachaun on a bed and noticed small bruises on Quachaun’s cheek and excrement with blood on the bed, which caused defendant to “get scared.”
The medical examiner testified that Quachaun had extensive blunt force trauma on his scalp, his face and at least 50 more bruises on the rest of his body. There was massive bleeding around the brain and abdominal cavity, and his liver and pancreas had been completely torn apart. He “died from multiple blunt impacts to his trunk and head with lacerations ... of the pancreas and the liver and subdural hemorrhage.” She stated that the large bruises on the child’s face were consistent with a person standing behind the child and grabbing him by the face, wrapping fingers around each cheek and applying force, and that the injuries to his scalp and subdural bleeding were consistent with the child’s head being slammed against a wall. She also testified that the wounds indicated that they had been delivered at different times, over a period of days, shortly before his death.
Defendant testified that he had moved into Smith’s apartment on December 25, 2005, and that she regularly hit her children with a belt and her hands.[1] He maintained that she became angry with him when he tried to intervene.
On Friday, January 27, 2006, at approximately 7:00 p.m., he heard Smith arguing with Quachaun and saw her hit him with a belt. He then went to a bar, and when he returned to the apartment, Smith told him that a television had fallen on *318 Quachaun. He asked Smith to take the child to the hospital, but she refused, saying the child was fine.
At about noon the following day, he saw Smith hitting Quachaun with her hands. He threatened to end his relationship with Smith and left the apartment. When he returned at 9:00 p.m., he saw that Quachaun was lethargic and noncommunicative, with no appetite. Since he was not the child’s father, defendant did not believe he could take him to the hospital, and Smith would not let him call 911.
Although Quachaun was not moving on Sunday morning, at 9:00 p.m. he told defendant that he wanted pizza and candy. As defendant was about to leave the apartment, he heard Smith arguing with Quachaun and again saw her hit him. Defendant asked her to stop, then grabbed his coat and left the apartment. When he returned at 1:00 a.m., he thought that Quachaun was having an epileptic seizure so he told Smith to call an ambulance.
Defendant maintained that he never struck Quachaun and that Nyeshia’s testimony was not true. He stated that the written statement he provided for the police was the product of coercion by the detectives who told him what to write, as was the case with the videotaped statement, which he only made because the police told him that if he wanted to see his daughter again, he had to say the same thing in front of the camera that he had written for the police.
At the close of the evidence, defense counsel requested that the court charge second-degree (reckless) manslaughter as a lesser included offense of counts one, which charged second-degree depraved-indifference murder under Penal Law § 125.25 (2), and three, which charged first-degree manslaughter under Penal Law § 125.20 (4) (involving a child victim). Counsel argued that the jury could find that defendant had just meant to discipline the boy. The People voiced no opposition to counsel’s request on evidentiary grounds, contending only that second-degree manslaughter should be charged exclusively under count one. Counsel did not request submission of criminally negligent homicide.
Ultimately, the court submitted the following offenses, in the alternative: second-degree depraved-indifference murder of a child under Penal Law § 125.25 (4), as charged in count two of the indictment; first-degree manslaughter (of a child), as charged in count three; second-degree manslaughter “as a lesser included offense”; and endangering the welfare of a child, as charged in count four. •
*319 In his summation, counsel argued primarily that Smith had beaten her son and caused his death. He concluded his argument by observing that the jurors could disagree with him, and also disagree with the prosecutor’s claim that defendant was a murderer, and so he asked them to consider the various charges—which he identified—in order to “weigh the entire situation” and “come in with the right verdict.” “It’s for [the jury] to consider, is this murder, is this not guilty, or is it something in between?”
After approximately three hours of deliberations, the jury acquitted defendant of second-degree murder and first-degree manslaughter, and convicted him of second-degree manslaughter. In accordance with the court’s charge, the jury rendered no verdict on the child-endangering count. Defendant was sentenced to 5 to 15 years’ imprisonment.[2]
On appeal, defendant argues that his trial counsel was ineffective for not requesting criminally negligent homicide as a lesser included offense of second-degree manslaughter. According to defendant, his trial counsel’s strategy was to place before the jury all the possible charges in order to have the jury pick the one that best fit the facts of the case. Defendant argues that with this strategy in mind, there was no reason for not requesting a charge of criminally negligent homicide.
New York’s standard for the effective assistance of counsel is whether the defendant was afforded “meaningful representation,” which requires assessing the representation in light of the law and the facts of the case, ordinarily viewed in their totality at the time of trial (People v Baldi, 54 NY2d 137, 147 [1981]). Moreover, counsel’s failure must seriously compromise the defendant’s right to a fair trial (see People v Benevento, 91 NY2d 708, 713 [1998]). The federal standard requires demonstration that the attorney’s performance failed to meet an objective standard of reasonableness (Strickland v Washington, 466 US 668, 687-688 [1984]) and that, but for counsel’s deficiency, a reasonable probability exists that the result of the proceeding would have been different (id. at 694). New York’s cases agree with the federal standard on its “reasonableness” prong, but depart on the “but for” prong, by “adopting a rule somewhat more favorable to defendants” (People v Turner, 5 NY3d 476, 480 [2005]).
*320 Both the United States Supreme Court and this State’s Court of Appeals have recognized that “a single failing in an otherwise competent performance [may be] so ‘egregious and prejudicial’ as to deprive a defendant of his constitutional right” (id.). However, “[s]uch cases are rare” and “counsel’s efforts should not be second-guessed with the clarity of hindsight” (id.) see also People v Borrell, 12 NY3d 365, 368 [2009] [“we have often tolerated errors by counsel where the overall representation was nonetheless capable of characterization as ‘meaningful’ ”]). For a single error to constitute ineffective assistance of counsel, the failing would have to be “clear-cut and completely dispositive” (Turner, 5 NY3d at 481), and not one based on a complex analysis (id). Our Constitution “guarantees the accused a fair trial, not necessarily a perfect one” (People v Benevento, 91 NY2d at 712).
Based on the record before us, however, we cannot state that counsel was ineffective. Counsel is not ordinarily deemed ineffective for failing to request a lesser included offense. Indeed, a court’s failure to submit a statutorily and factually appropriate lesser included offense “does not constitute error” absent a party’s request for such a charge (CPL 300.50 [2]). This waiver provision recognizes that the lack of such a request typically reflects trial strategy (see Turner, 5 NY3d at 483). We cannot determine and need not speculate as to counsel’s strategy in failing to request the lesser included offense of criminally negligent homicide, or whether defendant participated in making that decision. However, it bears noting that there is no appellate contention that defendant’s second-degree manslaughter conviction was against the weight of the evidence, or that defendant did not have the requisite mens rea for conviction of that crime. While we recognize that a single egregious failing by counsel may deprive a defendant of his or her constitutional right to effective assistance (Turner, 5 NY3d at 480), we cannot conclude that failing to seek the lesser included offense of criminally negligent homicide was either a clear-cut or a dispositive error (see People v Borrell, 12 NY3d 365 [2009]).[3]
*321 As noted above, defendant need not show a reasonable probability that but for counsel’s failure to request submission of criminally negligent homicide as a lesser included offense he would have been convicted of that crime and not second-degree manslaughter (People v Caban, 5 NY3d 143, 155 [2005]). Nonetheless, there is a prejudice component to an ineffective assistance of counsel claim under the State Constitution (id. at 155-156). In this regard, defendant’s reliance on the speed with which the jury acquitted him of second-degree murder and first-degree manslaughter is misplaced. The speed with which the jury acquitted him of these crimes does not undermine the verdict finding that guilt of second-degree manslaughter had been proven beyond a reasonable doubt or provide anything other than speculative support for the notion that the jury might have convicted him of criminally negligent homicide. Moreover, particularly given that defendant does not otherwise fault his attorney in any respect, that he was acquitted of the more serious crimes is relevant to the “fairness of the process as a whole” (id. at 156).
Contrary to defendant’s argument, Turner is inapposite as counsel’s trial strategy in that case was evident from the record on appeal. In Turner, the defendant, who had been charged with second-degree murder (for a crime committed 16 years earlier), decided to gamble on acquittal and thus, trial counsel unsuccessfully objected to the submission of a lesser included manslaughter charge. Since manslaughter (unlike murder) was subject to a statute of limitations defense, counsel could have kept that charge out by raising that defense. In finding counsel ineffective, the Court noted that given counsel’s strategy, “it could not have been rational for trial counsel to abandon a statute of limitations defense that would have prevented the charge from being submitted” (5 NY3d at 484). Here by contrast, counsel’s failure to request criminally negligent homicide was not outcome determinative, and it cannot be said that counsel’s strategies fell short of the objective standard of reasonableness (Turner, 5 NY3d at 485) required by both the Federal and State *322 Constitutions. In short, the record before us does not support a claim of ineffective assistance of counsel.[4]
With respect to defendant’s sentence, the record does not establish that it was based on the crimes of which he was acquitted or any other improper criteria, and we perceive no basis for reducing it.
Accordingly, the judgment of the Supreme Court, Bronx County (Denis J. Boyle, J.), rendered November 1, 2007, convicting defendant, after a jury trial, of manslaughter in the second degree, and sentencing him to a term of 5 to 15 years, should be affirmed.
Gonzalez, P.J., Buckley, Catterson and McGuire, JJ., concur.
Judgment, Supreme Court, Bronx County, rendered November 1, 2007, affirmed.

. An examination at the hospital of the other children revealed that they all had bruises and scars on their bodies.

. Smith pleaded guilty to manslaughter in the second degree on July 18, 2007, and was sentenced to a term of 21h to 7V2 years.

. Although the record does not support defendant’s claim, we reject the People’s position that defendant waived his ineffective assistance of counsel claim based on People v Parilla (8 NY3d 654 [2007]), where the Court held that the defendant had waived a statute of limitations defense by pleading guilty and that he could not sidestep the consequences of his plea by claiming that his counsel was ineffective for failing to file a motion to dismiss the indictment on statute of limitations grounds. Here, the People argue that (n. coat’d) *321 based on Parilla, this Court should find that defendant’s contention that counsel was ineffective for failing to request the charge on criminally negligent homicide was waived. Parilla, however, pertained to the rights waived by a guilty plea and the inability of a defendant to revive issues so waived by arguing ineffective assistance of counsel. Here, defendant proceeded to trial and may raise on direct appeal the issues that would have otherwise been waived by a guilty plea.

. Appellant’s recourse should have been to pursue his claim by way of a CPL 440.10 motion.