# SUPREME COURT OF THE STATE OF NEW YORK
## Appellate Division, Fourth Judicial Department

**711.2**
**KA 03-00716**
PRESENT: SCUDDER, P.J., CARNI, SCONIERS, VALENTINO, AND WHALEN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

ERIC HARRIS, DEFENDANT-APPELLANT.
(APPEAL NO. 2.)

---

DAVID J. PAJAK, ALDEN, FOR DEFENDANT-APPELLANT.

BARRY L. PORSCH, DISTRICT ATTORNEY, WATERLOO, FOR RESPONDENT.

---

Appeal from a judgment of the Seneca County Court (Dennis F. Bender, J.), rendered March 27, 2003. The judgment convicted defendant, upon a jury verdict, of assault in the first degree, arson in the second degree, reckless endangerment in the first degree and assault in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: In appeal No. 1, defendant appeals from a resentence following the entry of the judgment in appeal No. 2, which convicted him following a jury trial of numerous offenses, including assault in the first degree (Penal Law § 120.10 [3]) and arson in the second degree (§ 150.15). He was sentenced to various determinate and indeterminate terms of incarceration, but County Court failed to impose periods of postrelease supervision on the determinate sentences as required by Penal Law § 70.45 (1). To correct that oversight, the court in appeal No. 1 resentenced defendant to the original terms of incarceration and imposed the requisite periods of postrelease supervision (*see generally* Correction Law § 601-d). In appeal No. 3, defendant appeals from an order denying his CPL 440.10 motion to vacate the judgment of conviction in appeal No. 2.

Addressing first defendant's contentions with respect to the judgment in appeal No. 2, we conclude that the court properly refused to suppress statements made by defendant at the crime scene and, subsequently, at the police station. Defendant's initial statements at the scene were made to the first trooper who arrived at the scene, in response to questions concerning how the ongoing fire had been started and if there was anyone else inside the residence. Those statements are admissible inasmuch as defendant was not in custody (*see People v Rodriguez*, 111 AD3d 1333, 1333, *lv denied* 22 NY3d 1158; *see generally People v Paulman*, 5 NY3d 122, 129), and the trooper's

questions were proper based on "the 'emergency doctrine' " (*People v Doll*, 21 NY3d 665, 670, *rearg denied* 22 NY3d 1053, *cert denied* ___ US ___, 134 S Ct 1552), i.e., legitimate public safety concerns.  After defendant was taken into custody, he was issued *Miranda* warnings by a different trooper.  During the entire conversation between defendant and that trooper, defendant was shaking his head left to right.  When asked if he understood the warnings, defendant responded affirmatively and, when asked if he wished to talk to the trooper, defendant remained silent.

One hour later, two investigators attempted to talk to defendant at the scene but, before they did so, one of the investigators asked defendant if he had been read the *Miranda* warnings, if those warnings had been read by a uniformed sergeant, if defendant understood those warnings and if he would agree to talk to the troopers.  Defendant, who was no longer shaking his head left to right, responded affirmatively to each question, and made several incriminating statements.  Shortly thereafter, defendant was transported to a local police station, where he was interviewed and gave three separate written statements.  Several hours after his arrival at the police station, the first statement was printed out.  Defendant read out loud his *Miranda* warnings from the top of that first statement, and he affirmatively waived the *Miranda* rights.  At no time during the entire process did defendant ask to speak with an attorney or ask the investigators to stop speaking with him.  Further, at no point did anyone threaten defendant or make any promises to him.  Throughout the interview, the college-educated defendant was courteous and cooperative, although he had one hand cuffed to the wall.

Defendant correctly contends that he did not explicitly waive his *Miranda* rights while at the crime scene or before the interview process began at the police station.  It is well settled, however, "that 'an explicit verbal waiver is not required; an implicit waiver may suffice and may be inferred from the circumstances' " (*People v Jones*, 120 AD3d 1595, 1595; *see People v Sirno*, 76 NY2d 967, 968; *People v Davis*, 55 NY2d 731, 733).  Here, defendant agreed to speak with investigators after confirming that he had been issued *Miranda* warnings and understood those warnings.  We thus conclude that a knowing and voluntary waiver of the *Miranda* rights may be inferred from the circumstances (*see Sirno*, 76 NY2d at 968; *Jones*, 120 AD3d at 1595).

Defendant further contends that the investigators should have repeated the *Miranda* warnings at the police station before any questioning began.  We reject that contention.  "[W]here, as here, 'a person in police custody has been issued *Miranda* warnings and voluntarily and intelligently waives those rights, it is not necessary to repeat the warnings prior to subsequent questioning within a reasonable time thereafter, so long as the custody [was] continuous' " (*People v Johnson*, 20 AD3d 939, 939, *lv denied* 5 NY3d 853; *see People v Peterkin*, 89 AD3d 1455, 1455-1456, *lv denied* 18 NY3d 885; *People v Debo*, 45 AD3d 1349, 1350, *lv denied* 10 NY3d 809).  Here, because defendant was issued the *Miranda* warnings at the crime scene,

reaffirmed his understanding of those warnings at the crime scene and implicitly waived those rights at the crime scene, there was no need to repeat the warnings before defendant was questioned at the station a short time later.

Defendant further contends that the court's jury instruction and the People's proof at trial materially varied from the allegations in the indictment with respect to the first count of the indictment and rendered that count of the indictment duplicitous. Following the close of proof at trial, the court instructed the jury that it could convict defendant of that count, charging defendant with assault in the first degree, if it found, inter alia, that defendant "beat [the victim] with a piece of wood and/or his fists." The court repeated that instruction after a request from the jury. The indictment, however, alleged that defendant "beat[] her with his fists *and* a piece of wood" (emphasis added).

While defendant seemingly contends that the indictment was rendered duplicitous by the court's instruction, defendant's actual contention is not that the proof at trial established more than one assault but, rather, that the court's instruction to the jury "differed significantly from the theory of the crime charged in the indictment" (*People v Charles*, 61 NY2d 321, 326), and thus violated his "right to be tried and convicted of only those crimes and upon only those theories charged in the indictment" (*People v Gaston*, 104 AD3d 1206, 1207, *lv denied* 22 NY3d 1156). Such a contention must be preserved (*see e.g. People v Odom*, 53 AD3d 1084, 1086, *lv denied* 11 NY3d 792; *People v Prato*, 143 AD2d 205, 206, *lv denied* 72 NY2d 1049, *reconsideration denied* 73 NY2d 858), unless the change in theory concerned an essential element of the offense, i.e., "[t]he variation from the theory of prosecution found in the indictment did not merely alter a factual incident in a way still consistent with that theory, but in fact changed the theory itself" (*Charles*, 61 NY2d at 329; *see People v Greaves*, 1 AD3d 979, 980; *People v Scott*, 159 AD2d 975, 976). Inasmuch as the court's instruction did not change an essential element of the offense, defendant's failure to object renders his contention unpreserved for our review.

In any event, we conclude that defendant's contention lacks merit. " 'Where an offense may be committed by doing any one of several things, the indictment may, in a single count, group them together and charge the defendant with having committed them all, and a conviction may be had on proof of the commission of any one of the things, without proof of the commission of the others' " (*Charles*, 61 NY2d at 327-328; *see People v Kaid*, 43 AD3d 1077, 1082-1083). "In charging the jury in the disjunctive, rather than in the conjunctive, the court did not amend the indictment, permit the People to change the theory of the prosecution, or render the count duplicitous" (*People v Frascone*, 271 AD2d 333, 333). We thus reject defendant's further contention that defense counsel was ineffective in failing to preserve that issue for our review. "There can be no denial of effective assistance of trial counsel arising from counsel's failure to 'make a motion or argument that has little or no chance of success' " (*People v Caban*, 5 NY3d 143, 152). We likewise reject

defendant's contention that defense counsel was ineffective based on his failure to request an intoxication charge. Such a charge was not warranted because the record does not contain evidence that defendant's use of intoxicants was " 'of such nature or quantity to support the inference that their ingestion was sufficient to affect defendant's ability to form the necessary criminal intent' " (*People v Sirico*, 17 NY3d 744, 745, quoting *People v Rodriguez*, 76 NY2d 918, 920).

Defendant further contends that defense counsel was ineffective in failing to retain and call an arson expert to testify at trial. That contention lacks merit. "Defendant has not demonstrated that such testimony was available, that it would have assisted the jury in its determination or that he was prejudiced by its absence" (*People v West*, 118 AD3d 1450, 1451, *lv denied* 24 NY3d 1048 [internal quotation marks omitted]; *see People v Venkatesan*, 295 AD2d 635, 637, *lv denied* 99 NY2d 565, *cert denied* 549 US 854). We do not address defendant's remaining challenge to the effectiveness of counsel because it "is raised for the first time in defendant's reply brief and thus is not properly before us" (*People v Jones*, 300 AD2d 1119, 1120, *lv denied* 2 NY3d 801; *see People v Hall*, 106 AD3d 1513, 1514, *lv denied* 22 NY3d 956).

We reject defendant's challenge to the severity of the resentence in appeal No. 1 and, finally, we conclude with respect to appeal No. 3 that the court properly denied defendant's CPL 440.10 motion. In that motion, defendant alleged, inter alia, that he had informed defense counsel before trial that some of his signatures on the statements had been forged. He thus alleged that defense counsel was ineffective in failing to retain a handwriting expert. Attached to the motion were reports from a handwriting expert, who had been retained by defendant's family after trial. At the hearing on the motion, however, defense counsel testified that he first learned of defendant's allegations of forgery when defendant testified at trial. "The conflicting testimony with respect to whether trial counsel had been informed about the [alleged forgery] prior to the trial presented an issue of credibility for the hearing court[,] and we decline to disturb the resolution of that issue" (*People v Castaneda*, 198 AD2d 292, 293, *lv denied* 83 NY2d 870). Moreover, the testimony of defendant's proposed handwriting expert was suspect and of little probative value inasmuch as it was internally inconsistent, contradicted in parts by the expert's own reports, and contradicted by defendant's own testimony. We thus conclude that defendant has failed to demonstrate that the expert testimony "would have assisted the jury in its determination or that [defendant] was prejudiced by its absence" (*West*, 118 AD3d at 1451 [internal quotation marks omitted]; *see generally People v Hobot*, 84 NY2d 1021, 1023-1024). Defendant therefore "failed to meet his burden at the hearing on the motion of 'proving by a preponderance of the evidence every fact essential to support the motion' " (*People v Smith*, 16 AD3d 1081, 1082, *lv denied* 4 NY3d 891, quoting CPL 440.30 [6]).

Entered: June 12, 2015

Clerk of the Court
Frances E. Cafarell