Matter of Newman (2024 NY Slip Op 03544)

Matter of Newman

2024 NY Slip Op 03544

Decided on June 27, 2024

Appellate Division, First Department

FRIEDMAN, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 27, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels
Cynthia S. Kern David Friedman Kelly O'Neill Levy Marsha D. Michael

Index No. 593/19, 593B/12, 593C/12 Appeal No. 1605 Case No. 2023-00264 

[*1]In the Matter of Isabel Newman, Deceased.
Robert Newman, Petitioner-Appellant,
Jesse Ostrow, Respondent-Respondent.

Petitioner appeals from a decree of the Surrogate's Court, New York County (Rita Mella, S.), entered November 23, 2022, which, to the extent appealed from as limited by the briefs, pursuant to a decision, same court and Justice, entered on or about July 7, 2022, granted respondent's motion for summary judgment dismissing the petition for turnover of personal property and the petition for the imposition of a constructive trust, and denied petitioner's cross-motion to disqualify respondent's counsel.

McCarthy Fingar LLP, White Plains (Robert H. Rosh of counsel), for appellant.
Herman Max Leibowitz, New York, for respondent.

FRIEDMAN, J. 

Petitioner appeals from a decree of the Surrogate's Court, New York County (Rita Mella, S.), entered November 23, 2022, which, to the extent appealed from as limited by the briefs, pursuant to a decision, same court and Justice, entered on or about July 7, 2022, granted respondent's motion for summary judgment dismissing the petition for turnover of personal property and the petition for the imposition of a constructive trust, and denied petitioner's cross-motion to disqualify respondent's counsel.
McCarthy Fingar LLP, White Plains (Robert H. Rosh of counsel), for appellant.
Herman Max Leibowitz, New York, for respondent.

FRIEDMAN, J.
In this probate proceeding, decedent's executor has filed petitions asserting claims against the estate of decedent's daughter (who died before decedent) for turnover and for imposition of a constructive trust. These claims are based on decedent's allegations that, about a decade before her daughter died, decedent had transferred her life savings to the daughter based on the daughter's promise to invest the assets for decedent's benefit during the decedent's lifetime and, ultimately, to divide the assets in equal thirds among the daughter and decedent's two sons.
The daughter's executor moved for summary judgment dismissing both the turnover petition and the constructive trust petition, arguing that all of decedent's executor's potential evidence is inadmissible and that, in any event, the claims are time-barred. Decedent's executor opposed the summary judgment motion and cross-moved to disqualify counsel for the daughter's executor, who had advised decedent during her lifetime and whom decedent's executor proposes to call as a witness at trial.
In the decree appealed from, the Surrogate granted the daughter's executor summary judgment dismissing both the turnover petition and the constructive trust petition on the ground that decedent's executor had not come forward with any admissible evidence to support the claims. In addition, the Surrogate denied the disqualification cross-motion as moot. Upon decedent's executor's appeal, for the reasons discussed below, we modify to reinstate the constructive trust petition and to grant the cross-motion to disqualify counsel.
Petitioner Robert Newman (Robert), the preliminary executor of the estate of decedent, his late mother, Isabel Newman (Isabel), seeks, on behalf of Isabel's estate, the remedies of turnover and constructive trust with respect to funds held by the executor of the estate of the late Jody Newman (Jody), who was Isabel's daughter and Robert's sister. Robert contends that, between 2006 and 2008, Isabel, who was then in her eighties and had recently been widowed, transferred $1,633,971.23 to Jody in reliance on Jody's alleged promise to manage the funds for Isabel's benefit during her lifetime and, after Isabel's death, for the benefit of Isabel's three children (Robert, Jody and their brother, Dr. Frederic Newman [Frederic]), each of whom was to [*2]inherit one third of the money upon Isabel's death. It appears to be undisputed that Isabel's assets were primarily deposited into accounts owned by Jody that were designated as "number 2" accounts (No. 2 accounts).
As it turned out, Isabel outlived her daughter Jody, who passed away in May 2017 at the age of 64. In June 2017, Isabel, Robert and Frederic discovered that Jody's No. 2 accounts contained only about $255,000, far less than the more than $1.6 million that Isabel allegedly had transferred to Jody. Thereafter, in September 2017, Surrogate's Court appointed respondent Jesse Ostrow to serve as executor of Jody's estate.[FN1]
In the probate proceedings for Jody's will, Isabel asserted a claim for $2 million against Jody's executor, based on the following allegation made in Isabel's affidavit, sworn to April 24, 2018, which has been made part of the record in this proceeding:
"When I was living with my late daughter, Jody Newman, she offered to invest my money for me. Specifically, she told me that I should give her all of my money and she would make 'us' rich. By 'us,' I always thought she meant the entire family — with the express understanding that the assets were mine and only mine while I was alive. My plan was to leave these assets in my will equally to my three adult children."
Isabel's claim finds arguable partial corroboration in the last will Jody executed before her death, dated November 17, 2009. That will contains a provision dividing equally among Robert, Frederic and Jody's residuary estate "any and all monies, securities, and other financial assets that I maintain in accounts titled 'Jody A. Newman, Account #2,' or any similar designation containing some variation of 'Account #2,' at the time of my demise[.]"
Jody's executor rejected Isabel's claim against Jody's estate. Isabel died in January 2019, before her claim against Jody's estate had been adjudicated.
In the proceedings for the probate of Isabel's will, from which this appeal arises, Robert, as executor of Isabel's estate, filed petitions against Jody's executor for turnover and for imposition of a constructive trust. The claim in each of the petitions is based, in substance, on Isabel's allegation in her 2018 affidavit that she had transferred her assets to Jody based on Jody's promise to invest the funds for Isabel's benefit and, upon her death, for the equal benefit of her three children.[FN2] In December 2021, Jody's executor moved, insofar as relevant to this appeal, to dismiss Robert's turnover and constructive trust petitions as barred by the statute of limitations or, in the alternative, for summary judgment dismissing the petitions. In support of the motion to dismiss, Jody's executor argued that the turnover and constructive trust claims are governed by a six-year statute of limitations — either CPLR 213(2) (express and implied contracts) or CPLR 213(8) (fraud) — and accrued no later than 2008, upon the completion of Isabel's transfers of funds to Jody. Therefore[*3], Jody's executor argued, the claims were time-barred by the time Robert's petitions were filed in 2019. In support of the summary judgment motion, Jody's executor argued that the only evidence offered in support of the petitions — Isabel's 2018 affidavit and a 2018 affidavit by Frederic's wife, Stacy Newman (Stacy), which had been filed in the proceedings for Jody's estate — was inadmissible under both the rule against hearsay and the "Dead Man's Statute" (CPLR 4519).
Robert opposed the dismissal and summary judgment motions and cross-moved (on grounds to be discussed subsequently) to disqualify Jody's executor's counsel. In opposition to the motion to dismiss, Robert asserted that both of his claims were in the nature of fraud, thereby entitling him to the benefit of the discovery rule of CPLR 213(8), under which the time to assert a fraud claim is extended to two years from the time the cause of action was discovered or should have been discovered (which, according to Robert, was June 2017 in this case).[FN3] In opposition to the summary judgment motion, Robert submitted various financial account statements, reflecting transfers from Isabel's accounts to Jody's accounts, and from Jody's No. 2 accounts to other accounts in Jody's name. In addition, Robert submitted Isabel's 2018 affidavit and those of Frederic, Stacy and Robert's fiancÉe, Mae Suico (Mae).
Stacy's affidavit contains the following account of her understanding of the financial relationship between Isabel and Jody:
"During the course of that approximate ten (10) year period [from the death of Isabel's husband in 2006 until Jody's death in May 2017], I had the occasion and did in fact engage in numerous conversations with both Jody and Isabel, and understood in speaking with them that Jody had taken control of Isabel's assets for purposes of managing, and maximizing, the value of Isabel's assets, and otherwise enabling Isabel to become 'rich.' At no time did Jody ever state or suggest that she seized ownership or title to Isabel's assets, and indeed, it was a given that each of Isabel's three (3) children (Jody, Frederic and Robert) would be accommodated in Isabel's will, and Isabel spoke of her three children as though she loved them equally and would leave the estate to the three (3) of them."
Mae's affidavit contains a similar account:
"I have had occasion, and privilege, to meet on many occasions with Robert's late mother, Isabel Newman . . . , commencing in 2015 through near the very end of Isabel's life in 2019. I have also had the occasion to meet, and engage in conversations with, Robert's late sister, Jody Newman (hereinafter, 'Jody'). In speaking with Isabel and Jody, it was obvious and apparent and indeed, Jody always seemed frank and transparent about her self-proclaimed role as 'money' manager of Isabel's finances. At no time did Jody ever state or suggest that she had seized ownership or title to Isabel's assets, and indeed, Isabel had made it known to me prior to Jody's [*4]death in May 2017, that it was Isabel's intent and desire to divide up and distribute her assets to her then three (3) living children."
Frederic's affidavit contains allegations substantially identical to those in the affidavits of Stacy and Mae. Robert's moving affidavit relies on the factual allegations in Isabel's 2018 affidavit and in the respective affidavits of Stacy, Mae and Frederic.
Robert also submitted in opposition to the summary judgment motion certain handwritten notes by Herman Max Leibowitz, Esq., who represents Jody's executor in these proceedings. Leibowitz, who had advised Jody and Isabel on estate matters, produced the notes in response to a subpoena duces tecum served upon him in this litigation. The notes, which Leibowitz authenticated at his deposition, reflect his impressions of a telephone conference among Jody, Isabel and himself that took place on October 23, 2009. Leibowitz's notes (the 2009 notes) reflect that, during this phone conference, he was told that Isabel had transferred "substantial $ [money]" to Jody upon the advice of another attorney (Jeffrey Abrandt, Esq.). The 2009 notes further state: "Jody maintains this $ [money] in a separate account labelled 'Jody Newman #2.' She and mother both stated that this $ [money] should go 1/3 + 1/3 + 1/3 to Jody and her 2 siblings at Mrs. Newman's death." The 2009 notes then go on to express uncertainty as to whether the plan was for Jody to receive her one-third share of the money in the No. 2 accounts by bequest upon Isabel's death or, alternatively, for Jody to take her share while Isabel was still living, leaving the rest of the money to be divided 50-50 between Robert and Frederic upon Isabel's death. The 2009 notes appear to conclude with Leibowitz quoting to Isabel a charge for preparing Jody's will.
Robert's cross-motion to disqualify Leibowitz was based on the rule against an attorney appearing as counsel in a proceeding in which he is likely to be called as a witness (see rule 3.7 of the Rules of Professional Conduct [22 NYCRR 1200.0]). Robert argued that, in view of the 2009 notes, Leibowitz was a material witness in this litigation. The disqualification motion was also based on Leibowitz's admission that Isabel had been a client of his, which, Robert argued, made it improper for him to represent an adversary of Isabel's estate in this proceeding under rule 1.9 of the Rules of Professional Conduct (22 NYCRR 1200.0) ("Duties to Former Clients").
In reply, Leibowitz maintained that all of the new affidavits that Robert had submitted in opposition to the motions were, like the 2018 affidavits by Isabel and Stacy, inadmissible in pertinent part as hearsay and as contrary to the Dead Man's Statute. As to the 2009 notes, Leibowitz argued that those notes, as well as his deposition testimony referring to them, and the deposition testimony of John Martin, a financial advisor to Jody and Isabel, established that, after the death of her husband in 2006, Isabel had been [*5]advised by Martin and her elder-law counsel, Abrandt (to whom she had been referred by Leibowitz), to transfer her financial assets to Jody for purposes of Medicaid planning. However, Leibowitz's affirmation and deposition testimony do not specifically contradict the claim in Isabel's 2018 affidavit and in the petitions that Jody had promised Isabel that the transferred funds would be maintained for Isabel's benefit during her lifetime and ultimately divided equally among the three children upon her death.
By decree dated November 23, 2022, from which this appeal is taken, the Surrogate granted Jody's executor summary judgment dismissing the petitions and denied Robert's cross-motion for the disqualification of Leibowitz. The decree was based on a decision, dated July 7, 2022, in which the Surrogate opined that Jody's executor was entitled to summary judgment because the principal evidence Robert had adduced to support his turnover and constructive trust claims — the testimony of Stacy and Mae concerning their discussions with Isabel and Jody — was, in the court's view, inadmissible hearsay. Insofar as Robert proposed to prove his case through Leibowitz's testimony, the Surrogate found that the 2009 notes provided no grounds to expect Leibowitz's testimony to be helpful to Robert, even if Leibowitz's testimony were admissible. In view of this determination, the Surrogate found it unnecessary to determine the validity of Jody's executor's statute of limitations argument. The cross- motion to disqualify Leibowitz was denied as moot in view of the dismissal of the petitions.
In our view, the Surrogate erred in granting Jody's executor summary judgment dismissing the constructive trust petition and in denying the cross-motion to disqualify Leibowitz as Jody's executor's counsel. Accordingly, for the reasons explained below, we modify the Surrogate's decree to deny the motion to dismiss as to the constructive trust petition and to grant the cross-motion to disqualify Leibowitz.
Before turning to the summary judgment motion, we will address the statute of limitations issue that Jody's executor raised in support of his motion to dismiss. On appeal, while Jody's executor acknowledges that the Surrogate "stopped short" of ruling on the validity of his statute of limitations defense, he "urges this Court . . . to make the determination that both [petitions] . . . are time-barred." As more fully discussed below, although we agree with Jody's executor that Robert's fraud-based turnover petition is time-barred, the constructive trust claim — which did not accrue at the same time as the fraud claim — is not.
While a constructive trust claim and a fraud claim may be based on the same set of alleged facts (as they are in this case), a claim for imposition of a constructive trust does not depend on proof that the transfer on which the claim is based was fraudulently induced. Rather, the elements of a claim for imposition of a constructive trust are "(1) a confidential [*6]or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment" (Sharp v Kosmalski, 40 NY2d 119, 121 [1976]). All that is generally required for imposition of this remedy is that "a party hold property under such circumstances that in equity and good conscience he [or she] ought not to retain it" (Simonds v Simonds, 45 NY2d 233, 242 [1978] [internal quotation marks omitted]). Since the wrong that a court seeks to remedy by imposing a constructive trust is the wrongful retention of the transferred property — not the original transfer — this Court has recognized that the event that triggers the accrual of the cause of action is "the wrongful withholding" of the transferred property, such withholding constituting "the acts . . . upon which the claim of constructive trust is predicated" (Kohan v Nehmadi, 130 AD3d 429, 430 [1st Dept 2015] [internal quotation marks omitted], quoting Matter of Sakow, 219 AD2d 479, 482 [1st Dept 1995]; see also Barone v Barone, 130 AD3d 765, 766 [2d Dept 2015] [where it is alleged that "the constructive trustee wrongfully withholds property acquired lawfully from the beneficiary," the constructive trust claim accrues upon "the date the trustee breaches or repudiates the agreement to transfer the property"] [internal quotation marks omitted]).
Here, the allegedly wrongful withholding that constitutes the basis of the constructive trust claim is the refusal by Jody's executor to return to Isabel the proceeds of the money that Isabel had transferred to Jody in the years 2006 through 2008. That refusal did not occur until after Jody's death in 2017, when Isabel, after the discovery of the depletion of the No. 2 accounts, demanded the return of the proceeds of her transfers to Jody. Since it is undisputed that a constructive trust claim is governed by a six-year statute of limitations (CPLR 213[1]), the constructive trust petition was timely when Robert filed it on behalf of Isabel's estate in 2019.[FN4]
This brings us to the Surrogate's grant of summary judgment dismissing the turnover and constructive trust petitions on the ground that all of the evidence in the record supporting those claims would be inadmissible at trial. Given that, "[o]n a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party" (Bazdaric v Almah Partners LLC, 41 NY3d 310, 316 [2024] [internal quotation marks omitted]), Robert presented sufficient admissible evidence to raise a triable issue as to whether Jody made the promise alleged by Isabel.[FN5] The above-quoted portions of the affidavits of Stacy and Mae submitted in opposition to the summary judgment motion, when construed liberally in the light most favorable to Robert, may be viewed as evidence of admissions by Jody that she had made a promise to Isabel concerning the transferred funds substantially similar to the promise alleged in the petitions and in Isabel's 2018 affidavit. Contrary to the view of the Surrogate's [*7]Court, an admission by a party is admissible against that party, as an exception to the hearsay rule, as evidence of the matter asserted in the admission, whether or not the party's statement was against his or her interest at the time the statement was made (see People v Caban, 5 NY3d 143, 151 n [2005] ["admissions by a party of any fact material to the issue are always competent evidence against him, wherever, whenever or to whomsoever made"] [internal quotations omitted], quoting Reed v McCord, 160 NY 330, 341 [1899]; People v Swart, 273 AD2d 503, 505 [3d Dept 2000] [to constitute competent evidence against a party, "admissions need not be against the party's interest at the time they were made"]; Jerome Prince, Richardson on Evidence §§ 8-201, 8-204, 8-203 [Farrell 11th ed 1995]; Robert A. Barker & Vincent C. Alexander, Evidence in New York State and Federal Courts §§ 8:14, 8:15 [5A West's NY Prac Series]; Michael M. Martin & Daniel J. Capra, New York Evidence Handbook §§ 8.3.2, 8.3.2.1 [3d ed]; 3-153 Bender's New York Evidence § 153.01[1] [2023]). Moreover, "[a]dmissions of a testator or intestate are competent against the estate" (Prince, Richardson, § 8-243; see Miller v Silverman, 247 NY 447, 450-451 [1928]; see also 3-153 Bender's New York Evidence § 153.13[5] ["The declarations of a decedent that impair his or her estate are admissible in evidence against his or her personal representative"]). Accordingly, admissions by Jody are competent evidence against Jody's executor, the representative of her estate.[FN6]
In addition to the testimony of Stacy and Mae, Robert may seek to prove Jody's alleged promise to Isabel through the testimony of Leibowitz, who currently represents Jody's executor in this proceeding and who advised Isabel and Jody on estate issues during their lifetimes. As previously noted, Leibowitz has authenticated the 2009 notes, which record Leibowitz's impressions of a phone conference he held with Isabel and Jody in October 2009 and tend to show that it was the mutual intention of Isabel and Jody that the proceeds of the funds Isabel had transferred to Jody would ultimately be divided equally among Isabel's three children. While the 2009 notes themselves are inadmissible hearsay, Leibowitz could be examined about his recollection, as refreshed by the 2009 notes, of the phone conference. As with Jody's alleged statements to Stacy and Mae, any statements Jody made to Leibowitz during the 2009 phone conference would be admissible against Jody's executor as admissions.
In granting Jody's executor summary judgment dismissing the constructive trust petition, the Surrogate opined that Jody's statements to Leibowitz reflected in the 2009 notes, even if admissible, did not "suggest that Jody was holding the assets, other than Jody #2 account, during [Isabel's] lifetime for the benefit of [Isabel] and her children." In our view, this statement is inconsistent with a court's obligation, upon a summary judgment motion, to view the facts [*8]in the light most favorable to the non-moving party. It is undisputed that the 2009 notes reflect that Jody acknowledged that the money Isabel had transferred to her had been placed in the No. 2 accounts and, upon Isabel's death, the proceeds of those funds would be divided equally among the three siblings. Certainly, a factfinder could reasonably infer from the discussions reflected in the 2009 notes that there had been an understanding between Isabel and Jody that the money Isabel had transferred to Jody would be left in the No. 2 accounts, aside from reasonable withdrawals for living expenses, to compound and for eventual distribution among the siblings. Any such agreement would have been rendered nonsensical if Jody were entitled to siphon money from the No. 2 accounts at will and transfer it to her personal investment accounts, as she allegedly did, thereby (to quote Robert) "gutting" the No. 2 accounts.
Contrary to Jody's executor's arguments, the record does not conclusively refute, as a matter of law, the alleged promise on which the constructive trust claim is based. In particular, Jody's executor highlights the provision in Jody's will for a three-way division of the money held in the No. 2 accounts "at the time of my [Jody's] demise." However, this provision does not necessarily imply that Jody, during her lifetime, was entitled to make unlimited withdrawals from the No. 2 accounts for her sole benefit. Jody's executor also relies on testimony by Leibowitz and Martin, the financial advisor, that the purpose of Isabel's transfers to Jody was Medicaid planning (i.e., to enable Isabel to rely on Medicaid to finance future residence in a nursing facility, if that became necessary). Such a purpose, however, would have been entirely consistent with an expectation by Isabel that Jody would maintain and compound the transferred funds in the No. 2 accounts for the ultimate equal benefit of all three siblings. Indeed, the very purpose of Medicaid planning transfers is to preserve a parent's assets for transfer to the next generation, and all of the record evidence indicates that it was Isabel's desire to benefit all three of her children equally, not simply to bestow all of her wealth upon Jody. Moreover, once Isabel had transferred her assets to the No. 2 accounts (to which Jody held sole legal title), the further transfer of those funds to Jody's other accounts did nothing to advance Isabel's Medicaid planning objectives.
Equally unavailing is Jody's executor's argument that Jody legitimately depleted the No. 2 accounts to pay the living expenses of Isabel and herself (who shared an apartment during the relevant period). To begin, this claim is not, on the present record, supported by admissible evidence, as its only source is an allegation made by Jody's executor "[u]pon information and belief" in his answer to the petitions. In any event, Jody's executor attributes to living expenses only approximately $430,000 of the withdrawals from the No[*9]. 2 accounts during the last nine years of Jody's life. Assuming the truth of this claim, it still fails to account for the disposition of approximately $1,000,000, given that (1) Isabel allegedly had transferred approximately $1.63 million to Jody's No. 2 accounts as of 2008 and (2) the No. 2 accounts were found to contain approximately $250,000 upon Jody's death in 2017. In sum, the extent to which the funds in the No. 2 accounts were legitimately withdrawn and spent on living expenses cannot be determined on this record and must be addressed at trial.
In short, while the record does not offer especially strong support to Robert's constructive trust claim, the modicum of evidence arguably supporting an inference in favor of the constructive trust claim suffices to raise a triable issue. We emphasize that we are merely denying Jody's executor's motion for summary judgment dismissing the constructive trust claim. Whether that claim has any merit will have to be determined by a factfinder after a trial.
Finally, the motion to disqualify Leibowitz should have been granted. For the reasons already discussed, the 2009 notes reflect that Leibowitz discussed with Jody and Isabel the transfers at issue in this case, and Robert may examine Leibowitz at trial about Jody's statements to him concerning any agreements, understanding or promises between herself and Isabel relating to those transfers. While it cannot be determined at this juncture whether Leibowitz's testimony will be of material assistance to Robert in proving his claim, it remains the case that Leibowitz discussed matters related to that claim with Jody, and his recollections of Jody's statements will be admissible against Jody's executor as admissions.[FN7] Because Leibowitz should be a witness in this case, his continued representation of Jody's executor in this proceeding violates the advocate-witness rule and disqualification pursuant to rule 3.7 of the Rules of Professional Conduct is appropriate.
Moreover, Leibowitz's representation of Jody's executor in this matter against Isabel's executor (Robert) plainly violates rule 1.9(a) of the Rules of Professional Conduct, which provides:
"A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."
In view of the 2009 notes documenting a discussion among Leibowitz, Jody and Isabel concerning the source and intended ultimate disposition of the funds in the No. 2 accounts, and contemplating Leibowitz's preparation of Jody's will (which was executed the following month), the subject matter of the instant dispute is plainly, at a minimum, "substantially related" to the matter on which Leibowitz advised Isabel. Accordingly, under both rule 3.7 and rule 1.9(a), it is improper for Leibowitz to represent [*10]Jody's executor in this proceeding.[FN8]
Accordingly, the decree of Surrogate's Court, New York County (Rita Mella, S.), entered November 23, 2022, which, to the extent appealed from as limited by the briefs, pursuant to a decision, same court and Justice, entered on or about July 7, 2022, granted respondent's motion for summary judgment dismissing the petition for turnover of personal property and the petition for the imposition of a constructive trust, and denied petitioner's cross-motion to disqualify respondent's counsel, should be modified, on the law, to deny the motion to dismiss as to the constructive trust petition and to grant the cross-motion to disqualify counsel, and otherwise affirmed, with costs to petitioner. The appeal from the aforesaid decision should be dismissed, without costs,
as subsumed in the appeal from the decree.
Decree, Surrogate's Court, New York County (Rita Mella, S.), entered November 23, 2022, and same court and Justice, entered on or about July 7, 2022, modified, on the law, to deny the motion to dismiss the constructive trust petition and to grant the cross-motion to disqualify respondent's counsel and otherwise affirmed, with costs. The appeal from the aforesaid decision dismissed, without costs, as subsumed in the appeal from the decree.
Opinion by Friedman, J. All concur.
Manzanet-Daniels, J.P., Kern, Friedman, O'Neill Levy, Michael, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 27, 2024

Footnotes

Footnote 1: Because the claims against respondent Ostrow are being asserted against him solely in his fiduciary capacity, this writing will refer to respondent henceforth as "Jody's executor."

Footnote 2: The crux of Robert's claims is set forth in the following allegations of the petitions:
"Jody began residing with [Isabel] and Harold [Isabel's husband and Jody's father] in or about between 2002 and 2004 and following Harold's death [in 2006], Jody took charge of [Isabel's] finances.
"Further, in or about 2007, Jody represented, promised and assured [Isabel] that if [Isabel] divested herself and gave to Jody all of [Isabel's] money in [her] [a]ccounts, Jody would make [Isabel] and her entire family 'rich,' with the express promise and understanding that the assets were and would remain assets of [Isabel] during [Isabel's] lifetime and maintained in accounts established and controlled by Jody (denominated and titled by Jody as 'Jody A. Newman, Account #2' [hereinafter collectively the 'Jody #2 Account']), and thereafter pass to her children, equally, upon [Isabel's] demise.
"Upon information and belief, and seemingly consistent with her representation, promise and assurance to [Isabel] that [Isabel's] [a]ccounts would remain assets of [Isabel] and then pass equally to her children upon [Isabel's] demise, Jody executed in 2009, in her Last Will and Testament, giving and bequeathing to her two (2) siblings . . . two-thirds of the Jody #2 Account.
"Unbeknownst to [Isabel] during Jody's lifetime, Jody had not, contrary to and in violation of her promise, assurance and representation to [Isabel], transferred the assets of [Isabel's] accounts to the Jody #2 Account for the benefit of [Isabel] and her children upon [Isabel's] demise, but rather, diverted the funds to another account or accounts established and/or otherwise controlled by Jody.
"Jody's diversion of [a]ccount assets to an account or accounts other than Jody #2 Account, was learned and discovered by . . . Robert . . . and [Isabel], having reviewed financial statements and other papers discovered by Frederic . . . in or about the last week of June 2017 following Jody's death showing that the value of the assets in the Jody #2 Account was less than $255,000, representing less than thirteen (13%) percent of the value of [Isabel's] [a]ccounts (of approximately $2,000,000) prior to the removal and transfer of the funds therefrom by Jody."

Footnote 3: Since Isabel died during this two-year period, Robert also claimed that CPLR 210(a) permitted the claims to be asserted within one year after Isabel's death.

Footnote 4: The fraud-based turnover petition, however, is time-barred and, on that ground, we affirm the Surrogate's decree insofar as it dismissed the turnover petition. The fraud claim appears to be based on the contention that Jody's original inducement of Isabel to transfer her assets to Jody was fraudulent, either actually or constructively. Accordingly, the fraud claim accrued no later than 2008, when Isabel's last transfer to Jody occurred, and the statute of limitations expired on the claim six years later, in 2014. The discovery rule of CPLR 213(8) does not salvage the claim. To the extent the alleged fraud was actual, Isabel's failure to discover the wrongdoing until after Jody's death in 2017, nearly a decade later, cannot be deemed reasonable, given that Isabel had access to Jody's financial account statements, which were sent to the apartment that the two women shared. To the extent the alleged fraud was constructive, the discovery rule does not apply, as the Surrogate noted (see Jaliman v D.H. Blair & Co., Inc., 105 AD3d 646, 647 [1st Dept 2013]).

Footnote 5: In turning to the sufficiency of Robert's evidence in opposition to the summary judgment motion, we assume, without deciding, that Jody's executor carried his burden as movant to shift to the opponent of the motion the burden of raising a triable issue of fact.

Footnote 6: Testimony by Stacy and Mae about their alleged communications with Jody concerning the disposition of Isabel's assets would not be barred by the Dead Man's Statute (CPLR 4519) because these witnesses, as the spouse and fiancÉe, respectively, of Isabel's sons, were not "interested in the event" within the meaning of that statute (see Matter of Murray v Smith, 155 AD2d 963, 963 [4th Dept 1989], citing Laka v Krystek, 261 NY 126, 130 [1933], and Matter of Mead, 129 AD2d 1008, 1008 [4th Dept 1987], lv denied 70 NY2d 609 [1987]; Prince, Richardson, § 6-124, at 330; 3-146 Bender's New York Evidence § 146.04[1][c] ["Since an interest in the event is created only by the direct legal operation and effect of the judgment, the spouse of a person interested in the event is not for that reason himself or herself interested in the event"] [internal quotation marks omitted]).

Footnote 7: Indeed, at the oral argument of this appeal, Leibowitz conceded, "I might be a witness but I'm not a witness to any kind of fraud." That Leibowitz does not believe that his testimony will help Robert establish that a fraud was committed is irrelevant because, as previously discussed, Robert need not prove fraud to prevail on his constructive trust claim. What is relevant is that there is a significant possibility that Leibowitz has knowledge material to the resolution of this dispute.

Footnote 8: Even if we were to affirm the dismissal of both of Robert's petitions against Jody's executor, we would modify to grant the motion to disqualify Leibowitz pursuant to rule 1.9, as Robert, were he aggrieved by our decision, would be entitled to seek leave to take a further appeal therefrom.